<u>**UNITED STATES DISTRICT COURT**</u>
<u>**DISTRICT OF MASSACHUSETTS**</u>

| | | |
|---|---|---|
| **NUVASIVE, INC.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 1:19-cv-10800** |
| | ) | |
| **TIMOTHY DAY** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

<u>**COMPLAINT**</u>

By and through its counsel of record, and for its Complaint, NuVasive, Inc. ("NuVasive"), states that:

<u>**Introduction**</u>

1.     NuVasive files this Complaint because Timothy Day, one of its former sales professionals ("Defendant"), is unfairly competing with it by, without limitation, tortiously interfering with a contract between NuVasive and an exclusive distributorship (which he controls) by dissolving it in violation of that contract.  Additionally, Defendant refuses to acknowledge the validity of the contractual non-competition and non-solicitation obligations he owes to NuVasive and, upon information and belief, has successfully recruited two NuVasive sales representatives and is currently recruiting NuVasive customers to leave NuVasive and join him in his new venture.

<u>**Statement of Relevant Facts**</u>

<u>**The Parties**</u>

2.     NuVasive is a market-leading, innovative designer, manufacturer, and promoter of products and processes used to treat spinal disease.  It is incorporated under the laws of Delaware and maintains its principle place of business in San Diego, California.

3.     NuVasive markets its products through a highly trained sales force which consists of direct employees and exclusive distributors.

4.     Defendant was engaged with NuVasive between August of 2011 and April 2, 2019. Defendant's first engagement was as a sales representative for an exclusive distributor of NuVasive's products, where his territory ultimately included six Boston-area hospitals.   On January 1, 2018, NuVasive hired Defendant as a Sales Director with a territory of the States of Massachusetts and Rhode Island.   Then, on January 3, 2019, Rival Medical, LLC ("Rival Medical"), for which Defendant serves as its Secretary of the Commonwealth Signatory, became an exclusive distributor of NuVasive's products over that same sales territory.

5.     Defendant resides in, and is a citizen of, the State of Massachusetts.

6.     NuVasive provided Defendant with proprietary training and entrusted him with its confidential and proprietary information during his engagement with NuVasive.   Additionally, Defendant became the face of NuVasive to many of the surgeons, hospitals, and other NuVasive customers in his NuVasive sales territory.

7.     During his engagement with NuVasive, Defendant generated goodwill with NuVasive's current and prospective customers. NuVasive is the owner of that goodwill.

**Jurisdiction, Venue, and Relevant Law**

8.     Section XIII of the January 6, 2018, Proprietary Information, Inventions Assignment, Arbitration, and Restrictive Covenants Agreement (the "PIIA") between NuVasive and Defendant is titled Mutual Arbitration Agreement.

9.     Unlike other provisions in the PIIA, which refer to Defendant's engagement with NuVasive, the Mutual Arbitration Agreement applies only to claims arising from his employment.

As the claims described in this Complaint arose after Defendant's tenure as a NuVasive employee (but during his engagement with NuVasive), the Mutual Arbitration Agreement is not applicable.

10.     The parties are completely diverse and the amount in controversy is greater than $75,000, exclusive of interest or costs.  Accordingly, the Court has subject matter jurisdiction pursuant to 28 U.S.C. Section 1332.

11.     As Defendant lives and performed services for NuVasive in the Boston area, he is subject to the Court's personal jurisdiction.  Additionally, venue is proper in this Court pursuant to 28 U.S.C. Section 1391(b).

12.     Section XVII of the PIIA provides that it shall be interpreted and enforced in accordance with Delaware law.

**The Relevant Contracts**

13.     Two contracts are relevant to this dispute.

14.     The first relevant contract is the PIIA, which Defendant signed as a condition of his "engagement" with NuVasive.  NuVasive attaches a copy of the PIIA as **Exhibit 1**.

15.     Sections VI and VII of the PIIA preclude Defendant from, during the term of his engagement with NuVasive (be it as an employee or independent contractor) and for one year after that engagement ends, within his sales territory of Massachusetts and Rhode Island:

   a.   competing with NuVasive;

   b.   soliciting, enticing, persuading, inducing, calling upon, or providing services to any NuVasive Customers (as defined by the PIIA) on behalf of a competitive company; and

   c.   inducing or influencing, or seeking to induce or influence, any NuVasive employee, agent, independent contractor, consultant, etc. to join a competitive business.

16.     The vast majority of spinal hardware companies require their sales professionals to agree to non-competition and non-solicitation clauses similar to those found in Section VI and VII of the PIIA.  This is because, without limitation:

    a.  the spinal hardware industry is highly competitive;

    b.  participants in this industry entrust their sales professionals with confidential and proprietary information, and (at least in NuVasive's case) proprietary training; and

    c.  sales professionals often become the face of their employer to the employer's surgeon customers.

17.     The second relevant contract is the January 1, 2019, Sales Representative Agreement between Rival Medical and NuVasive (the "Sales Agreement").  NuVasive attaches a copy of the Sales Agreement as **Exhibit 2**.

18.     The Sales Agreement has a three-year term and does not allow Rival Medical to terminate it prior to the expiration of the term unless NuVasive materially breaches its terms.

19.     Section 5.09(c) of the Sales Agreement provides, among other things, that neither Rival Medical nor any of its Representative Affiliates – who are Rival Medical's partners, employees, sub-contractors, sales personnel (whether employees of Rival Medical or independent contractors), affiliates or agents who have provided services pursuant to the Sales Agreement or have received information from Rival Medical related to NuVasive's products – can compete with NuVasive during the term of the Sales Agreement (January 1, 2019, through January 1, 2021) and for one year after that term expires.  To comply with this provision, Section 5.09(e) requires Rival Medical to represent and warrant that each Representative Affiliate executes an agreement which contractually obligates that person or entity to comply with Section 5.09(c)'s non-competition obligations.

**Defendant notifies NuVasive that he is dissolving Rival Medical**

20.     On March 26, 2019, Defendant (albeit unsuccessfully) attempted to get one of

NuVasive's in-house lawyers to agree that the non-compete and non-solicit obligations imposed

on Rival Medical by the Sales Agreement somehow removed the non-compete and non-solicit

obligations imposed on him by the PIIA.  NuVasive attaches a copy of the relevant email exchange

between Defendant and Kirk Tyree as **Exhibit 3**.

21.     On Saturday, March 30, 2019, Defendant sent an email to NuVasive's President,

U.S. Commercial, Paul McClintock ("McClintock") which states:

> Paul,
>
> The purpose of this e-mail is to provide notice that Rival Medical, LLC has begun
> dissolution.  I am grateful for the friendships and memories that I have at NuVasive
> and will organize the appropriate transition.
>
> Tim Day

NuVasive attaches a copy of this email as **Exhibit 4**.

22.     On Monday, April 1, 2019, Defendant sent another email to McClintock which

states:

> Paul,
>
> Since I have not heard from anyone, and I have confirmed with my team that
> coverage should not be an issue after today.  I am going to make to (sic) April 1st
> my last day.
>
> Thanks
>
> Tim

NuVasive attaches a copy of this email as **Exhibit 5**.

23.     Through its counsel, NuVasive wrote to Defendant and Defendant's counsel on

April 1 and 2, 2019.  These letters, which NuVasive attaches as **Exhibits 6** and **7**, respectively,

requested, among other things, that Defendant and Rival Medical comply with their contractual obligations to NuVasive.

24.     Neither Defendant nor his attorneys responded to the April 1 and 2, 2019, letters by stating that Defendant would comply with his contractual obligations.  Indeed, Defendant stated that he has no restrictive covenants.

**Defendant refuses to provide NuVasive with assurances that he will comply with his restrictive covenants and two NuVasive sales representatives recently left NuVasive to join Defendant's new employer**

25.     Defendant is now affiliated with NuVasive's competitor, Alphatec Spine, Inc. ("Alphatec").

26.     Upon information and belief, Defendant is soliciting NuVasive's customers in his former sales territory to join him at Alphatec.

27.     Within days of Defendant's resignation, NuVasive learned that one of Rival Medical's sales representatives, Adam Richard ("Richard"), would not continue his relationship with NuVasive.

28.     Upon information and belief, Defendant recruited Richard to join him at Alphatec.

29.     On April 17, 2019, one of NuVasive's Albany, New York-based sales representatives (who formerly worked with Defendant in the Boston area), Colin Behrmann ("Behrmann"), abruptly resigned and stated that he is joining Defendant at Alphatec.

30.     The same attorneys who represent Defendant (and Rival Medical) also represent Behrmann.

31.     On April 18, 2019, Defendant, through his attorney, informed NuVasive that he does not believe he is subject to any enforceable non-competition or non-solicitation obligations, and refused to provide any assurances that Defendant would honor his restrictive covenants.

## Count I – Tortious Interference with the Sales Agreement

32.     NuVasive adopts the allegations contained in paragraphs 1 through 31.

33.     The Sales Agreement is a valid and enforceable contract.

34.     As Rival Medical's Secretary of the Commonwealth Signatory, Defendant knew of Rival Medical's contractual obligations at all times relevant to this Complaint.

35.     Intentionally, and without justification, Defendant caused Rival Medical to cease doing business and dissolved (or is dissolving) Rival Medical.

36.     Rival Medical will not be able to comply with its obligations for the remainder of the Sales Agreement's term if it dissolves, thus breaching the Sales Agreement.

37.     Defendant interfered with the Sales Agreement with improper motive to unfairly compete with NuVasive, and with improper means (including, without limitation) by causing Rival Medical to cease to do business and dissolve.

38.     Rival Medical's failure to comply with its remaining contractual obligations is harming NuVasive.  Without limitation, this failure has:

   a.   required NuVasive to hire sales professionals to fill the void left by Rival Medical's failure to comply with his contractual obligations;

   b.   robbed NuVasive of the goodwill Rival Medical generated with NuVasive's customers in its sales territory; and

   c.   cost NuVasive sales and revenue.

## Count II – Breach of Contract

39.     NuVasive incorporates the allegations contained in paragraphs 1 through 31.

40.     The PIIA is a valid and enforceable contract which is supported by adequate consideration.

41.     Defendant violated (or is violating) a number of the PIIA's provisions.

42.    Defendant's violations of the PIIA include, without limitation:

    a.    violating Section VI – Non-Solicitation – by persuading, inducing, calling on, providing services to, or soliciting NuVasive customers within his sales territory or with whom he worked to move some or all of their business to Alphatec;

    b.    violating Section VI by, upon information and belief, influencing Richard to leave NuVasive and join him at Alphatec;

    c.    violating Section VI by influencing Behrmann to leave NuVasive and join him at Alphatec;

    d.    violating Section VI by causing Rival Medical to terminate its relationship with NuVasive; and

    e.    violating Section VII – Non-Competition – by working for a Conflicting Organization within his former sales territory.

## Count III – Injunctive Relief

43.    NuVasive incorporates the allegations contained in paragraphs 1 through 31.

44.    NuVasive is likely to prevail on its claims that Defendant is tortiously interfering with the Sales Agreement and is violating the PIIA.  Indeed, the indisputable facts establish (or strongly indicate) that:

    a.    Defendant is dissolving Rival Medical in order to avoid its contractual obligations to NuVasive;

    b.    Defendant believes he is not subject to any enforceable non-competition and/or non-solicitation obligations; and

    c.    Defendant is soliciting NuVasive's customers and sales representatives to leave NuVasive and join him at Alphatec.

45.    As Defendant agreed in Section XVIII of the PIIA, NuVasive will suffer irreparable harm, for which monetary damages cannot fully compensate it, if Defendant is not preliminarily and permanently enjoined from violating the PIIA's non-competition and non-solicitation

provisions.  Indeed, if Defendant is not enjoined, NuVasive will likely lose additional employees and customers.

46.      Granting the requested injunction will not harm Defendant as he is already contractually prohibited from doing what NuVasive seeks to enjoin him from doing, and NuVasive will post a bond sufficient to cover any damages he does suffer.

47.      Granting the requested injunction is in the public interest as the public has an interest in having reasonable contracts (such as the Sales Agreement and the PIIA) enforced as written.

## Prayer for Relief

WHEREFORE, NuVasive respectfully requests that this Court:

A.      issue preliminary and permanent injunctions which prohibit Defendant from violating the non-competition and non-solicitation obligations in his PIIA, and from dissolving Rival Medical, LLC or otherwise interfering with NuVasive's contract with that entity;

B.      find that Defendant interfered with the Sales Agreement and violated his contractual obligations to NuVasive, and that these acts or omissions caused NuVasive to incur damages;

C.      award NuVasive all of the damages it is entitled to receive including, without limitation, compensatory and punitive damages;

D.      award NuVasive pre and post-judgment interest; and

E.      grant any other relief it deems just and proper.

Respectfully submitted,

**NUVASIVE, INC.**

By its attorneys,

*/s/ Michael S. Batson*
Holly M. Polglase (BBO #553271)
hpolglase@hermesnetburn.com
Michael S. Batson (BBO #648151)
mbatson@hermesnetburn.com
Matthew F. Renna (BBO #691589)
mrenna@hermesnetburn.com
HERMES, NETBURN, O'CONNOR & SPEARING, P.C.
265 Franklin Street, Seventh Floor
Boston, MA 02110-3113
Tel: (617) 728-0050
Fax: (617) 728-0052

Christopher W. Cardwell, Esq. (*pro hac vice* forthcoming)
GULLETT, SANFORD, ROBINSON & MARTIN, PLLC
150 Third Avenue South, Suite 1700
Nashville, TN 37201
(615) 244-4994 (Telephone)
(615) 256-6339 (Facsimile)
ccardwell@gsrm.com

*Attorney for Plaintiffs NuVasive, Inc.*

Dated: April 22, 2019