**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| _____ ) | | |
| ) | | |
| NUVASIVE, INC., ) | | |
| ) | | |
| *Plaintiff,* ) | | |
| ) | | |
| v. ) | | Civil Action No. 19-cv-10800 |
| ) | | |
| TIMOTHY DAY, ) | | |
| ) | | |
| *Defendant.* ) | | |
| ) | | |
| _____) | | |

| | | |
|---|---|---|
| _____ ) | | |
| ) | | |
| NUVASIVE, INC., ) | | |
| ) | | |
| *Plaintiff,* ) | | |
| ) | | |
| v. ) | | Civil Action No. 19-cv-10995 |
| ) | | |
| ADAM RICHARD, ) | | |
| ) | | |
| *Defendant.* ) | | |
| ) | | |
| _____) | | |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                          **May 29, 2019**

**I.      Introduction**

Plaintiff NuVasive, Inc. ("NuVasive") seeks preliminary injunctive relief against

Defendants Timothy Day ("Day") and Adam Richard ("Richard")[1] to enjoin Day and Richard

---

[1] NuVasive filed two separate complaints against Day, 19-cv-10800, and Richard, 19-cv-10995. The two cases present largely overlapping facts and the Court will discuss them here together. Citations to docket entries will be "Day, D. __" or "Richard, D. __" as appropriate.

from allegedly violating their non-competition and non-solicitation obligations.  Day, D. 8; Richard, D. 4.

For the reasons discussed below, the Court ALLOWS IN PART and DENIES IN PART the motion for preliminary injunction against Day, Day, D. 8, and DENIES the motion for preliminary injunction against Richard, Richard, D. 4.

## II.   Factual Allegations

### A.   NuVasive and Rival Employment

NuVasive is a manufacturer of products used to treat spinal disease.  Day, D. 1 at ¶ 2. NuVasive is incorporated in Delaware and maintains its principal place of business in San Diego, California.  Id.

Day worked as a sales representative for an exclusive distributor of NuVasive's products and then as a sales director for NuVasive from August 2011 to April 2019.  Id. at ¶ 4.  Day's territory as a sales representative was six Boston-area hospitals and then expanded to Massachusetts and Rhode Island when he became a sales director.  Id.

Richard also began as a sales associate for an exclusive distributor of NuVasive's products, with a territory of fifteen Massachusetts hospitals.  Richard, D. 1 at ¶ 13.  In January 2018, Richard became a sales representative for NuVasive.  Id. at ¶ 14.  In January 2019, Richard became a sales representative for Rival Medical, LLC ("Rival"), Richard, D. 1 at ¶ 17, which at the same time became the exclusive distributor for NuVasive's products in Massachusetts and Rhode Island. Day, D. 1 at ¶ 4.

Day was the principal of Rival.  Day, D. 1 at ¶ 4.  On March 30, 2019 and April 1, 2019, Day sent emails to NuVasive's President, U.S. Commercial, Paul McClintock stating that Rival

was dissolving and that April 1, 2019 would be Day's last day.  Id. at ¶¶ 21-22.  Richard terminated his relationship with NuVasive soon after Day resigned from Rival.  Richard, D. 1 at ¶ 28.

Both Day and Richard currently are affiliated with Alphatec Spine, Inc. ("Alphatec"), which NuVasive identifies as a competitor in the spinal products market.  Id. at ¶ 25.

### B.     Relevant Agreements

While both Defendants have multiple contracts that NuVasive might seek to enforce, NuVasive relies upon the NuVasive PIIA as to Day, Day, D. 8 at 1, and upon the Rival PIIA as to Richard, Richard, D. 4 at 1, for the injunctive relief it seeks here.  Accordingly, the Court turns to the relevant portions of both agreements.

As to Day, NuVasive relies upon the Proprietary Information, Inventions Assignment, Arbitration, and Restrictive Covenants Agreement (the "NuVasive PIIA").  D. 1-1.   Although NuVasive alleges that each Defendant executed this agreement as a condition of their employment, Day, D. 1 at ¶ 14; Richard, D. 1 at ¶ 15, NuVasive has only produced the NuVasive PIIA as executed by Day.  D. 1 at 12-13 (signed by Day on January 6, 2018).  The NuVasive PIIA includes both a non-solicitation clause (Section VI) and a non-competition clause (Section VII).  Day, D. 1-1 at 6-9.  Both clauses include provisions extending the terms of the clauses for one year following the termination of Defendants' engagement with NuVasive, "regardless of the reason for the termination."  Id.  The non-solicitation clause provides that the employee agrees not to "solicit, entice, persuade, induce, call upon or provide services to any of the Customers (as defined in Section VII), accounts or clients that I worked with, had responsibility or oversight of, provided services related to, or learned significant information about during my employment (or other association) with the Company for any purpose other than for the benefit of the Company" or to "induce or influence, or seek to induce or influence, any person who is employed or engaged by

the Company . . . with the purpose of obtaining such person as an employee . . . for a business competitive with the Company." Id. at 7. The non-competition clause forbids the employee from any affiliation with a "Conflicting Organization," which is defined as "any person, group of persons, or organization that is engaged in, or about to be engaged in, research on, consulting regarding, or development, production, marketing or selling of any product, process, invention or service, which resembles, competes with, or replaces a product, process, machine, invention or service upon which I shall have worked or about which I became knowledgeable as a result of my relationship with the Company, and whose use or marketability could be enhanced by the application of Proprietary Information to which I shall have had access during such relationship." Id. For employees with certain titles, including Sales Director, Sales Associate and "any substantially similar position[s]," the "post-employment restrictions" are limited to Customers "for which I . . . was assigned responsibility for by the Company, participated in sales calls and/or marketing efforts on behalf of the Company, and/or covered medical procedures on behalf of Company, during the last twelve months of my employment with Company . . . ." Id. at 8.

As to Richard, NuVasive relies upon the Proprietary Information, Inventions Assignment, Arbitration, and Restrictive Covenants Agreement between Richard and Rival (the "Rival PIIA"). The Rival PIIA contains a substantially identical non-solicitation clause (Section VI) and non-competition clause (Section VII) as the NuVasive PIIA. Richard, D. 1-2 at 7-9. The Rival PIIA also includes a third-party beneficiary clause that identifies NuVasive as an intended third-party beneficiary of the agreement. Id. at 9.

## III.    Standard of Review

To obtain a preliminary injunction, a plaintiff must show: "(1) a substantial likelihood of success on the merits; (2) a significant risk of irreparable harm if the injunction is withheld; (3) a

favorable balance of hardships, and (4) a fit (or lack of friction) between the injunction and the public interest." Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003) (citation omitted). The Court may accept as true "well-pleaded allegations [in the complaint] and uncontroverted affidavits," Rohm & Haas Elec. Materials, LLC v. Elec. Circuits, 759 F. Supp. 2d 110, 114, n.2 (D. Mass. 2010) (quoting Elrod v. Burns, 427 U.S. 347, 350, n.1 (1976)), but when "courts are faced with affidavits at odds and must make a credibility determination between them, courts generally do not issue a preliminary injunction, but rather leave the issue for a jury to resolve." Rohm & Haas, 759 F. Supp. 2d at 125, n.107; see Spencer Cos., Inc. v. Armonk Indus., Inc., 489 F.2d 704, 707 (1st Cir. 1973) (affirming trial court's denial of a preliminary injunction when a "major factual dispute" existed regarding the materiality of any misrepresentations and finding that the district court "was within its discretion to conclude that there was uncertainty whether [the plaintiff] would ever prevail on the merits"). Further, injunctive relief is an "extraordinary and drastic remedy." Voice of the Arab World v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011) (citation and quotations omitted); see Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008).

## IV.    Procedural History

On April 22, 2019, NuVasive filed its complaint against Day asserting claims for tortious interference, breach of contract and injunctive relief. Day, D. 1 at 7-8. Four days later, on April 26, 2019, NuVasive filed its complaint against Richard asserting claims for breach of contract and injunctive relief. Richard, D. 1 at 7-8. On April 23, 2019, NuVasive moved for a preliminary injunction against Day, Day, D. 8, and followed three days later, April 26, 2019, with a motion for a preliminary injunction against Richard, Richard, D. 4. On May 15, 2019, the Court heard the

parties on the pending motions and took the matters under advisement.  Day, D. 27; Richard, D. 22.

## V.      Discussion

### A.      <u>Preliminary Injunction Factors</u>

#### 1.      *Likelihood of Success on the Merits*

##### a)      <u>Choice of Law</u>

The NuVasive PIIA includes a "Governing Law" provision that provides "[t]his Agreement shall be interpreted and enforced in accordance with Delaware law, without giving effect to its laws pertaining to conflict of laws." [2]  Day, D. 1-1 at 11.  Day, however, disputes whether Delaware law should apply.  In a diversity action, the choice-of-law rules that apply are those of the forum state, in this case, Massachusetts.  <u>Klaxon v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496 (1941).

As a general rule, Massachusetts courts will give effect to a contractual choice-of-law clause.  <u>See, e.g.</u>, <u>Morris v. Watsco, Inc.</u>, 385 Mass. 672, 674 (1982).  Massachusetts, however, will not honor a choice of law provision if "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or [where] application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state [in the determination of the particular issue]' and is the State whose law would apply. . .'in the absence of an effective choice of law by the parties.'"  <u>Oxford Glob. Res., LLC v. Hernandez</u>, 480 Mass. 462, 469 (2018) (quoting Restatement (Second) of Conflict of Laws § 187(2) (1971)).

None of the contentions raised by Day warrant not giving effect to the choice of Delaware law by the parties in the NuVasive PIIA.  First, Delaware has a substantial relationship to the

---

[2] The Rival PIIA identifies Massachusetts law as the governing law of the agreement, Richard, D. 1-2 at 11, and no party disputes the application of Massachusetts law to the Rival PIIA.

parties as it is the place of incorporation of NuVasive.  <u>See, e.g.</u>, <u>New England Surfaces v. E.I. Du</u>
<u>Pont De Nemours & Co.</u>, 460 F. Supp. 2d 153, 159 (D. Me. 2006) (applying Restatement test in
noting that a "substantial relationship exists between Delaware and the parties and transactions
because DuPont is incorporated in the state of Delaware").  Second, it was also reasonable to
choose the law of this state where, as comments to the Restatement suggest, Restatement (Second)
of Conflict of Laws § 187(2) cmt. f (1971), the parties had a reasonable basis for choosing the law
of the state of NuVasive's incorporation where such law is well known and sufficiently developed.

Finally, although Day's contentions about the application of Delaware being contrary to
the fundamental public policy merit some further discussion, they do not merit a different choice
of law than the ones the parties chose in the NuVasive PIIA. Day maintains there are two
independent fundamental public policies of Massachusetts to which application of Delaware law
would be contrary:  1) the "material change" doctrine; and 2) Massachusetts' policy against
applying other states' laws in the context of non-competition and non-solicitation provisions, as
expressed in the recently enacted Massachusetts Noncompetition Agreement Act ("MNCA"),
Mass. Gen. Laws ch. 149, § 24L.

As to the "material change" doctrine, it is at best unclear to the Court that such doctrine
reflects a fundamental public policy.  "'Public policy' in this context refers to a court's conviction,
grounded in legislation and precedent, that denying enforcement of a contractual term is necessary
to protect some aspect of the public welfare."  <u>Beacon Hill Civic Ass'n v. Ristorante Toscano, Inc.</u>,
422 Mass. 318, 321 (1996).  This doctrine, which has been "occasionally invoked . . . to bar the
enforcement of restrictive covenants in employment agreements," <u>see</u> <u>Tannatt v. Varonis Sys.,</u>
<u>Inc.</u>, No. CV 18-12589-JGD, 2019 WL 830482, at *3 (D. Mass. Feb. 21, 2019), has not been cited
in caselaw as representing an overall public policy.  Even if it did reflect such a policy, however,

it appears unclear that the doctrine would inure to Day's benefit here.  "It is apparently correct that under Massachusetts law, '[e]ach time an employee's employment relationship with the employer changes materially such that they have entered into a new employment relationship a new restrictive covenant must be signed.'"  Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 16 (1st Cir. 2009).  Here, Day maintains, and NuVasive does not allege otherwise, that "on January 3, 2019, Day ceased being a NuVasive employee" and became a member of Rival.  Day, D. 21 at 2.  Day elsewhere describes what happened in January 2019 as the "terminat[ion]" of his "employment relationship with NuVasive."  Day, D. 26 at 3.  The material change doctrine was created to address situations in which "parties had abandoned their old arrangement and had entered into a new relationship," not instances in which the relationship was terminated.  F. A. Bartlett Tree Expert Co. v. Barrington, 353 Mass. 585, 587 (1968).  Given the severing of Day's relationship with NuVasive, the material change doctrine is inapplicable to such circumstances.  Even if that were not true, the NuVasive PIIA contemplates such change as it provided Day's acknowledgement that he "understand[s] and agree[s] that any subsequent change or changes in my duties, salary or compensation will not affect the validity or scope of this Agreement."  Day, D. 1-1 at 11.

Next, Day argues that applying Delaware law would be contrary to the public policy against certain choice of law provisions barred by the MNCA.  Day, D. 21 at 3-5.  The MNCA reads, "[n]o choice of law provision that would have the effect of avoiding the requirements of this section will be enforceable if the employee is, and has been for at least 30 days immediately preceding his or her cessation of employment, a resident of or employed in Massachusetts at the time of his or her termination of employment."  Mass. Gen. L. c. 149, § 24L(e).  Day acknowledges that the MNCA does not apply to the agreements at issue here since the MNCA, effective as of October 5, 2018,

applies only to agreements entered on or after October 1, 2018.  Mass. Gen. L. c. 149, § 24L.  Even as Day relies upon MNCA not as a statutory bar, but as public policy of the Commonwealth, his argument fails for at least two reasons.  First, Day has not shown that, even if the MNCA applied here, that the NuVasive PIIA would violate its terms.  The MNCA only applies to non-competition agreements as it expressly excludes "covenants not to solicit or hire employees of the employer" or "covenants not to solicit or transact business with customers, clients or vendors of the employers."  Id. at § 24L(a) (defining "noncompetition agreement").  Only examining the non-competition provision of the NuVasive PIIA, this Court still cannot say that applying Delaware law would have the effect of avoiding the requirements of MNCA, particularly § 24L(b)(i)-(viii) identifying the minimum requirements for a non-competition agreement to be valid and enforceable.  Id. at § 24L(b).  Similar to Delaware law, the MNCA provides that the scope of same must be reasonable in geographic scope and the scope of prohibited activities and no broader than necessary to protect trade secrets, confidential information or the employer's goodwill.  Moreover, the NuVasive PIIA was in writing, supported by consideration separate from continued employment, D. 1-1 at 2, expressly states that the employee may consult counsel, D. 1-1 at 1, and does not exceed 12 months from the date of cessation of employment, D. 1-1 at 7.  As to the apparent absence of a "garden leave" clause as required in the MNCA, even the MNCA allows for the alternative of "mutually-agreed upon consideration" cited in the agreement, as it was here, D. 1-1 at 2.  Finally, it is difficult to conclude that applying the Delaware choice of law provision would have "the effect of avoiding of the requirements" of the MNCA when the parties executed the NuVasive Agreement before the enactment and effective date of the MNCA.

Finding no "fundamental policy" against application of Delaware law to interpretation of the NuVasive PIIA, the Court need not reach the remaining considerations in Massachusetts choice

of law analysis (whether Massachusetts has a materially greater interest than Delaware in the litigation and is the state whose law would apply absent the provision) and will apply Delaware law, as agreed in the contract, to its interpretation of the NuVasive PIIA.

        b)      <u>Breach of Contract Claims</u>

Although NuVasive also asserts a tortious interference claim against Day, the focus of its preliminary injunction motions is on the claims for breach of contract that it asserts against both Day and Richard.  Accordingly, the Court's analysis of its reasonable likelihood of success on the merits will focus on this claim.

Under Delaware law, which the Court applies to the NuVasive PIIA, the elements of a breach of contract claim are "first, the existence of the contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, the resultant damage to the plaintiff."  <u>VLIW Tech, L.L.C. v. Hewlett–Packard Co.</u>, 840 A.2d 606, 612 (Del. 2003).  Under Massachusetts law, which the Court applies to the Rival PIIA as to Richard, the elements are the same.  <u>Coll v. PB Diagnostic Sys., Inc.</u>, 50 F.3d 1115, 1122 (1st Cir. 1995) (applying Massachusetts law).

Both PIIAs, including their respective non-competition and non-solicitation clauses, are valid and enforceable contracts.  Under Delaware law, for such a clause to be enforceable, it must "(1) be reasonable in geographic scope and temporal duration, (2) advance a legitimate economic interest of the party seeking its enforcement, and (3) survive a balancing of the equities in order to be enforceable."  <u>Concord Steel, Inc. v. Wilmington Steel Processing Co., Inc.</u>, Case No. Civ–3369–VCP, 2008 WL 902406, at *4 (Del. Ch. Apr. 3, 2008).  An employer may enforce a non-competition or non-solicitation provision "against a former employee if they do so 'to protect good will, proprietary information or other legitimate interests of [the] business,' but not solely 'to

hamper future competition' or 'to make an object lesson of [the] defendant.' <u>Avaya, Inc. v. Ali</u>, No. CV 12-10660-DJC, 2012 WL 2888474, at *7 (D. Mass. July 13, 2012) (quoting <u>Lewmor, Inc. v. Fleming</u>, 12 Del. J. Corp. L. 292, 296–97 (Del. Ch. 1986) (applying Delaware law)).

Similarly, under Massachusetts law, restrictive covenants "are enforceable only if they are 'necessary to protect a legitimate business interest, reasonably limited in time and space, and consonant with the public interest.'" <u>Lombard Med. Tech., Inc. v. Johannessen</u>, 729 F. Supp. 2d 432, 438 (D. Mass 2010) (quoting <u>Boulanger v. Dunkin' Donuts, Inc.</u>, 442 Mass. 635, 639 (2004)). In Massachusetts, "courts will not enforce non-competition agreements meant solely to protect employers from run-of-the-mill business competition[, b]ut the protection of trade secrets, other confidential information, and the good will the employer has acquired through dealings with his customers constitute legitimate business interests." <u>Id.</u> at 439 (citations and quotation marks removed). "When 'the employer introduce[s] the client to the salesman or the salesman cultivated his relationship with the client while employed by the employer,' the good will 'belongs' to the employer." <u>Id.</u> at 439 (D. Mass. 2010) (quoting <u>IKON Office Solutions, Inc. v. Belanger</u>, 59 F. Supp. 2d 125, 128 (D. Mass. 1999)).

The scope of both provisions is reasonable in scope (limited to customer matters handled, respectively, by each defendant) and duration (limited to twelve months) and are reasonably structured to protect NuVasive's legitimate business interests, namely its confidential information and goodwill. Day and Richard instead challenge whether NuVasive has shown a reasonable likelihood of success in proving that they each breached these contracts and the Court now addresses each of these alleged breaches in turn.

(1)     Alleged Breach of Contract by Day

NuVasive devoted a considerable amount of its principal brief, Day, D. 9, and its reply brief, Day, D. 22-1, to addressing whether the NuVasive PIIA was enforceable and considerably less time to showing how Day had breached that agreement.  To show that he had breached the non-competition provision, NuVasive would have to show that Day "serve[s] as a . . . employee . . . or otherwise for, . . . work or consult for or otherwise affiliate myself with any Conflicting Organization."  D. 1-1 at 7.  The parties do not dispute that Alphatec is a competitor of NuVasive's in the spinal products market.  Day, D. 26 at 2; Richard, D. 21-1 at 1-2.  NuVasive's burden to show a breach of contract of the non-competition clause of the NuVasive PIIA, however, is not limited to such showing, but requires a showing that Alphatec falls within the definition of "Conflicting Organization":  "any person, group of persons, or organization that is engaged in, . . . development, production, marketing or selling of any product, . . . or service upon which I shall have worked or about which I became knowledgeable as a result of my relationship with [NuVasive], and whose use or marketability could be enhanced by the application of Proprietary Information to which I shall have had access during such relationship."  D. 1-1 at 7.  Day contends that NuVasive has failed to make this showing and the Court agrees.

Colin Ennis, a NuVasive salesperson, attests that "Alphatec's products directly compete with NuVasive products that Mr. Day and Mr. Richard sold prior to ending their NuVasive engagements."  Day, D. 22-2 at ¶ 6.  Day does not appear to dispute this point, but Ennis' further attestation that Day and Richard "could improve the marketability of Alphatec's . . . products by disseminating the confidential and proprietary information that NuVasive provides to its sales force," id. at ¶ 7, is conclusory and neither identifies what confidential and proprietary information nor explains the way in which this would improve the marketability of Alphatec's products,

products which NuVasive also does not identify.  Although the affidavit of Joseph MacDermott, a

NuVasive spine specialist, provides more information about the confidential and/or proprietary

information that Day would have had about a particular hospital account (NuVasive's key surgeon

customer and their preferences, procedures and products used; past pricing, desired pricing, sales

strategies and information about NuVasive's key competitors), D. 24-2 at 2, such assertion without

the context of the products and the information falls short of showing a reasonable likelihood of

success regarding same.  Even without reaching Day and Richard's denials that they have not

disclosed NuVasive's confidential information or trade secrets or used any proprietary information

in their roles at Alphatec, Day, D. 26 at 4; Richard, D. 21-1 at 2, the Court concludes that NuVasive

has not shown a breach of the non-competition provision of the NuVasive PIIA.

The Court, however, reaches a different conclusion as to the non-solicitation clause of the

NuVasive PIIA, concluding that the plaintiff has shown a reasonable likelihood of success as to

this breach of contract claim against Day.  To show a breach of this clause, NuVasive must show

a breach of Day's agreement that "during the term of my engagement and for one (1) year

immediately thereafter, I will not: (a) solicit, . . . call upon or provide services to any of the

Customers (as defined in Section VII [which is defined there to include hospitals, payers and

physicians]), accounts or clients that I worked with, had responsibility or oversight of, provided

services related to, or learned significant information about during my employment (or other

association) with [NuVasive] for any purpose other than for the benefit of [NuVasive]." D. 1-1 at

7.

Although Ennis's affidavit was less precise about Day's alleged breach of this provision—

attesting that he had observed Day speaking with surgeons at Beth Israel to whom he had

previously sold products during his NuVasive employment and believed he was soliciting him to

utilize Alphatec products, Day, D. 22-2 at ¶¶ 9-12, MacDermott's affidavit provides an uncontroverted basis for such breach.   MacDermott attests that Day gave his Alphatec card to a surgeon with whom Day worked while at NuVasive and, in a handwritten note, urged the surgeon to reach out to take advantage of the "immense opportunity" with Alphatec, Day, D. 24-2 at 2-4. At the very least, such evidence amounts to Day having "call[ed] upon" a Customer of NuVasive and given the substance of the note and his current position at Alphatec, such contact was for purpose other than for the benefit of NuVasive, his former employer.

To the extent that Day belatedly argues that any such breach by him is excused by an alleged breach by NuVasive of its sales agreement with Rival,  D. 26 at 3, there is no legal basis for such defense, even if Day raises it to explain his motivation for dissolving Rival and moving to Alphatec.  Id.  For reasons explained above, however, NuVasive has shown a reasonable likelihood of success as to its breach of contract claim against Day for the non-solicitation clause of the NuVasive PIIA at least as it pertains to Customers.[3]

Moreover, having found such breach, the Court concludes that NuVasive has also shown a reasonable likelihood of showing injury as a result of this breach as Day acknowledged in the preamble to the non-solicitation clause, D. 1-1 at 6, and as neither defendant disputes here.

---

[3] NuVasive has not, at this juncture, shown a reasonable likelihood of success as to Day's alleged breach of the non-solicitation of NuVasive employees.  NuVasive maintains "upon information and belief" that Day recruited Richard to join Alphatec. Day, D. 1 at ¶ 28.  NuVasive provides no support for its belief that any such "induce[ment] or influence," D. 1-1 at 7, occurred. "[V]ague or conclusory" allegations are insufficient to satisfy the plaintiff's burden on a motion for preliminary injunction.  See Palmer v. Braun, 155 F. Supp. 2d 1327, 1331 (M.D. Fla. 2001), aff'd, 287 F.3d 1325 (11th Cir. 2002) (citing Atari Games Corp. v. Nintendo of Am., Inc., 897 F.2d 1572, 1575 (Fed. Cir. 1990)).  Further, factual attestations "based on personal knowledge are accorded more weight than" those "based upon mere belief or hearsay."  Id.  The Court concludes that NuVasive's conclusory allegations with respect to Day's alleged recruitment of NuVasive employees do not provide enough support to make success on the merits a likelihood at this stage.

(2)     Alleged Breach of Contract by Richard

As to the alleged breach of contract claim against Richard regarding the non-competition clause of the Rival PIIA, the Court concludes, for the same reasons stated above as to Day, that NuVasive has not shown a reasonable likelihood of success as to this claim.

Unlike the analysis above as to Day's alleged breach of the non-solicitation clause, the Court concludes that NuVasive has not shown, at this juncture, a reasonable likelihood of success as to this claim.

Assuming *arguendo* that Rival PIIA was fully executed by both parties (a point Richard does not necessarily dispute, but complains of NuVasive's failure to produce same here), the facts NuVasive proffers as to Richard's alleged breach of the non-solicitation clause are less compelling than those proffered as to Day.  Ennis attests that he observed Day (without Richard) speaking with a surgeon who was a Customer while they were at NuVasive on April 22, 2019.  Richard, D. 5-2 at 2.  Ennis does not suggest that Richard was present for that conversation and Richard denies being at the hospital that day.  Richard, D. 21-1 at 2.  Ennis further attests that Richard was present the following day, April 23, 2019, with Day at the hospital while a surgeon to whom both Day and Richard had sold products for NuVasive performed a surgery utilizing Alphatec products, Richard, D. 5-2 at 2.  Richard, unlike Day, avers that he has not solicited any of his previous NuVasive customers and has only contacted Alphatec's current client physicians and hospitals.  Richard, D. 21-1 at 2.  Given this current state of the record, there is no specific evidence of "call[ing] upon" or solicitation as to Richard soliciting Customers.  Accordingly, the Court concludes that NuVasive also has not shown a likelihood of success on the merits with respect to its breach of contract claim against Richard pertaining to the non-solicitation clause.

Having ruled that NuVasive has not made the requisite showing of a breach by Richard, the Court need not reach Richard's other arguments that NuVasive has failed to identify the proprietary information with specificity or the "ownership" of any goodwill generated during his employment at NuVasive.

> 2.   *Risk of Irreparable Harm*

Since NuVasive has failed to make the requisite showing as to a reasonable likelihood of success of its claim against Richard, the Court addresses the remaining prongs of the standard for preliminary relief only as to Day as to the non-solicitation clause.

To obtain injunctive relief, a plaintiff must also show a "significant risk of irreparable harm if the injunction is withheld." EEOC v. Astra USA, 94 F.3d 738, 742 (1st Cir. 1996). NuVasive argues that violation of the non-competition and non-solicitation provisions of the agreements creates the risk of "evident and substantial" harm to its business. Richard, D. 5 at 10. NuVasive cites Corp. Techs., Inc. v. Harnett, 943 F. Supp. 2d 233, 243 (D. Mass. 2013), as support for its position. Defendants suggest that NuVasive has not shown risk of actual harm and that the "*potential* loss of a *single* sale to a *single* customer is insufficient to establish irreparable harm." Richard, D. 20 at 11 (emphasis in original). NuVasive's citation to Corp. Techs, Inc., however, shows why the risk is not one of a single customer or sale. There, the Court concluded that "[plaintiff] sank significant investments of money and resources into its development of goodwill with its clients through [defendant]. It would be practically impossible to calculate the extent of the damage to [plaintiff] if [defendant] were permitted to poach his former clients in direct breach of his agreed-upon non-solicitation provision." Corp. Techs., Inc., 943 F. Supp. 2d at 243. If Day was "to use [his] extensive knowledge of [NuVasive's] business or [his] relationships with [NuVasive's] customers or [his] knowledge of customer's needs in [his] new position with

[Alphatec], the plaintiff would undoubtedly suffer harm that cannot be quantified in monetary terms. By its nature, the injury caused would be irreparable." Iron Mountain Info. Mgmt., Inc. v. Viewpointe Archive Servs., L.L.C., 707 F. Supp. 2d 92, 112 (D. Mass. 2010). The Court concludes, therefore, that the threat of irreparable harm to NuVasive is sufficient to warrant an injunction at this time.

       *3.     Balance of Interests*

"Any potential harm caused to [NuVasive] by a denial of its motion must be balanced against any reciprocal harm caused to [Day] by the imposition of an injunction." TouchPoint Sols., Inc. v. Eastman Kodak Co., 345 F. Supp. 2d 23, 32 (D. Mass. 2004). "Non-competition agreements by their nature impose some burden on former employees. That fact alone does not make such covenants unenforceable." Lombard Med. Tech., 729 F. Supp. 2d at 442 (citation and quotation marks removed). Here, Day acknowledged in the NuVasive PIIA that the post-employment restrictions would not preclude him from gainful employment if he were "obligated not to compete with [NuVasive] during the period and with the limitations described above." Day, D. 1-1 at 9. Even setting this acknowledgment to one side, and considering the disruption a preliminary injunction precluding Day from soliciting former customers would cause to him, and, to a lesser extent, Alphatec, the Court nonetheless finds that the harm a preliminary injunction would cause to Day is outweighed by the significant risk of irreparable harm to NuVasive absent an injunction.

       *4.     Public Interest*

A preliminary injunction is not appropriate unless there is "a fit (or lack of friction) between the injunction and the public interest." Nieves–Marquez, 353 F.3d at 120. "In cases involving restrictive covenants between private parties performing private work, analysis of the 'public interest' prong is usually confined to brief platitudes." Oxford Glob. Res., Inc. v. Guerriero, No.

Civ. A. 03-12078-DPW, 2003 WL 23112398, at *10 (D. Mass. Dec. 30, 2003).  Given the general public interest in allowing private parties to contract freely, see In re BankAtlantic Bancorp, Inc. Litig., 39 A.3d 824, 846 (Del. Ch. 2012) (noting that "[t]he public has a strong interest in seeing that contract and property rights are respected"), the Court finds that issuance of a preliminary injunction would be consistent with the public interest.

## VI.      Conclusion

For the above reasons, the Court ALLOWS IN PART and DENIES IN PART NuVasive's motion for preliminary injunction against Day, Day, D. 8 (pending the posting of a bond of $5,000 under Fed. R. Civ. P. 65(c) by no later than June 5, 2019) and DENIES NuVasive's motion for preliminary injunction against Richard, Richard, D. 4.  Accordingly, the Court ORDERS that Day to comply with the non-solicitation clause of the NuVasive PIIA with respect to solicitation of NuVasive Customers (as defined by the PIIA) pending further Order of this Court.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge