UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NUVASIVE, INC.,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>TIMOTHY DAY,<br><br>　　　　Defendant. | Civil Action No. 19-cv-10800 |

| | |
|---|---|
| NUVASIVE, INC.,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>ADAM RICHARD,<br><br>　　　　Defendant. | Civil Action No. 19-cv-10995 |

**MEMORANDUM AND ORDER**

**CASPER, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**October 9, 2019**

**I.　Introduction**

Plaintiff NuVasive, Inc. ("NuVasive") has filed this lawsuit against Defendants Timothy Day ("Day") and Adam Richard ("Richard")[1] alleging tortious interference (Day, Count I), breach

---

[1] NuVasive filed separate complaints against Day, 19-cv-10800, and Richard, 19-cv-10995. The two cases present largely overlapping facts and the Court will discuss them here together. Citations to docket entries will be "Day, D. __" or "Richard, D. __" as appropriate.

1

of contract (Day, Count II; Richard, Count I) and seeking injunctive relief (Day, Count III; Richard, Count II). Day and Richard have each moved to dismiss the complaints filed against them for failure to state a claim. Day, D. 40; Richard, D. 27. For the reasons discussed below, the Court DENIES IN PART Day's motion to dismiss, Day, D. 40, and DENIES IN PART Richard's motion to dismiss, Richard, D. 27, allowing both motions only as to the freestanding claims for injunctive relief, Count III in the Day complaint and Count II in the Richard complaint.

## II.     Factual Allegations

### A.     NuVasive and Rival Employment

NuVasive is a manufacturer of products used to treat spinal disease. Day, D. 1 at ¶ 2. NuVasive is incorporated in Delaware and maintains its principal place of business in San Diego, California. Id.

Day worked as a sales representative for an exclusive distributor of NuVasive's products and then as a sales director for NuVasive from August 2011 to April 2019. Id. at ¶ 4. Day's territory as a sales representative was six Boston-area hospitals and then expanded to Massachusetts and Rhode Island when he became a sales director. Id.

Richard also began as a sales associate for an exclusive distributor of NuVasive's products, with a territory of fifteen Massachusetts hospitals. Richard, D. 1 at ¶ 13. In January 2018, Richard became a sales representative for NuVasive. Id. at ¶ 14. In January 2019, Richard became a sales representative for Rival Medical, LLC ("Rival"), Richard, D. 1 at ¶ 17, which at the same time became the exclusive distributor for NuVasive's products in Massachusetts and Rhode Island. Day, D. 1 at ¶ 4.

Day was also affiliated with Rival. Day, D. 1 at ¶ 4. On March 30, 2019 and April 1, 2019, Day sent emails to NuVasive's President, U.S. Commercial, Paul McClintock stating that Rival

was dissolving and that April 1, 2019 would be Day's last day. Id. at ¶¶ 21-22. Richard terminated his relationship with NuVasive soon after Day resigned from Rival. Richard, D. 1 at ¶ 28.

Both Day and Richard currently are affiliated with Alphatec Spine, Inc. ("Alphatec"), which NuVasive identifies as a competitor in the spinal products market. Id. at ¶ 25.

**B.     Relevant Agreements**

Both Defendants have two contracts with NuVasive or in which NuVasive has a third-party interest. The first contract, relevant to both Defendants, is the Proprietary Information, Inventions Assignment, Arbitration, and Restrictive Covenants Agreement (the "NuVasive PIIA") between each Defendant and NuVasive. Day, D. 1-1. The NuVasive PIIA includes both a non-solicitation clause (Section VI) and a non-competition clause (Section VII). Day, D. 1-1 at 6-9. Both clauses include provisions extending the terms of the clauses for one year following the termination of Defendants' engagement with NuVasive, "regardless of the reason for the termination." Id. The non-solicitation clause provides that the employee agrees not to "solicit, entice, persuade, induce, call upon or provide services to any of the Customers (as defined in Section VII), accounts or clients that I worked with, had responsibility or oversight of, provided services related to, or learned significant information about during my employment (or other association) with the Company for any purpose other than for the benefit of the Company" or to "induce or influence, or seek to induce or influence, any person who is employed or engaged by the Company . . . with the purpose of obtaining such person as an employee . . . for a business competitive with the Company." Id. at 7. The non-competition clause forbids the employee from any affiliation with a "Conflicting Organization," which is defined as "any person, group of persons, or organization that is engaged in, or about to be engaged in, research on, consulting regarding, or development, production, marketing or selling of any product, process, invention or service, which resembles,

competes with, or replaces a product, process, machine, invention or service upon which I shall have worked or about which I became knowledgeable as a result of my relationship with the Company, and whose use or marketability could be enhanced by the application of Proprietary Information to which I shall have had access during such relationship." Id. For employees with certain titles, including Sales Director, Sales Associate and "any substantially similar position[s]," the "post-employment restrictions" are limited to Customers "for which I . . . was assigned responsibility for by the Company, participated in sales calls and/or marketing efforts on behalf of the Company, and/or covered medical procedures on behalf of Company, during the last twelve months of my employment with Company . . . ." Id. at 8.

The second relevant contract for Day is the Sales Representative Agreement between Rival Medical and NuVasive (the "Sales Agreement"). Day, D. 1 at ¶ 17. The Sales Agreement was executed on January 1, 2019 and has a three-year term. Day, D. 1-1 at 14. The Sales Agreement permits Rival to terminate the contract if NuVasive materially breaches its terms. Id. at 25.

The second relevant contract for Richard is the Proprietary Information, Inventions Assignment, Arbitration, and Restrictive Covenants Agreement between Richard and Rival (the "Rival PIIA"). Richard, D. 1 at ¶¶ 18-19. The Rival PIIA contains a substantially identical non-solicitation clause (Section VI) and non-competition clause (Section VII) as the NuVasive PIIA. Richard, D. 1-2 at 7-9. The Rival PIIA also includes a third-party beneficiary clause that identifies NuVasive as an intended third-party beneficiary of the agreement. Id. at 9.

### III. Standard of Review

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation

4

omitted). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id. Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit. Id. Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the conduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted). In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103 (citation omitted).

## IV. Procedural History

On April 22, 2019, NuVasive filed its complaint against Day asserting claims for tortious interference, breach of contract and injunctive relief. Day, D. 1 at 7-8. Four days later, on April 26, 2019, NuVasive filed its complaint against Richard asserting claims for breach of contract and injunctive relief. Richard, D. 1 at 7-8. On April 23, 2019, NuVasive moved for a preliminary injunction against Day, Day, D. 8, and followed three days later, April 26, 2019, with a motion for a preliminary injunction against Richard, Richard, D. 4. On May 29, 2019, the Court allowed in part and denied in part the motion for a preliminary injunction against Day and denied the motion against Richard. Day, D. 31; Richard, D. 25. Both Day and Richard have now moved to dismiss all counts against them. Day, D. 40; Richard, D. 27. The Court heard the parties on the pending motions and took the matters under advisement. Day, D. 54; Richard, D. 42.

## V. Discussion

### A. Day's Motion to Dismiss

#### 1. Tortious Interference Claim

NuVasive's claim for tortious interference against Day is based upon the Sales Agreement between Rival and NuVasive and the dissolution of Rival, allegedly caused by Day. Day, D. 1 at ¶¶17-19, 32-38. Day argues that NuVasive's tortious interference claim (Count I) must fail as a matter of law because "a party cannot interfere with its own contract" and because NuVasive has failed to plead actual malice with respect to Day's actions. Day, D. 41 at 6-7.

To allege a claim for tortious interference with a contract, NuVasive must plead that "1) [it] had a contract with a third party; (2) the defendant knowingly induced the third party to break that contract; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) NuVasive was harmed by the defendant's actions." G.S. Enters., Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 272 (1991).[2] "A party to the contract cannot be held liable for intentional interference." Harrison v. NetCentric Corp., 433 Mass. 465, 477 (2001). "Under Massachusetts law, corporations and individual defendants are indistinguishable when the individuals are the corporation's sole stockholder." Stello v. Ark Eng'g & Tech. Servs., Inc., No. CV 15-10590-PBS, 2015 WL 4254080, at *2 (D. Mass. July 14, 2015) (internal quotation marks omitted).

With respect to Day's relationship to Rival, NuVasive alleges that Day "controls" Rival, Day, D. 1 at 1, and that he "serves as [Rival's] Secretary of the Commonwealth Signatory." Id. at 2. These two allegations, however, even taken as true, do not establish that Day and Rival are

---

[2] Both parties rely upon Massachusetts law as to this claim. Day, D. 41 at 5-7; D. 49 at 5-9.

6

"indistinguishable." The cases Day cites that have come to a contrary conclusion involve cases of an individual who owns 100% of the shares of a company and/or serves all officer functions for a company such that the individual essentially becomes the alter ego of the company. See Stello, 2015 WL 4254080, at *2 (finding defendants were indistinguishable from company because they owned 100% of shares of company, served as its directors and officers and were the sole members); Terespolsky v. Law Offices of Stephanie K. Meilman, P.C., No. 2003-1077, 2004 WL 333606, at *6 (Mass. Sup. Ct. Feb. 23, 2004) (finding corporation and individual indistinguishable where individual was the sole director, owner and shareholder who "maintained control over all aspects of the operation [of the corporation]"). Relying upon the facts alleged in the complaint, as the Court must do at this juncture, this Court cannot presently conclude that Day is indistinguishable from Rival. The allegation that Day "controls" Rival, particularly in the context of a claim for tortious interference alleging Day caused Rival to cease doing business with NuVasive and dissolve, does not rise to the level of establishing Day as indistinguishable from Rival as a matter of law. See, e.g., Harrison, 433 Mass. at 478 (noting that defendant was "a founder of the company, the chairman of the board, the chief executive officer, and a larger shareholder, among other things, but that "these facts do not permit us to conclude as a matter of law that [defendant] controlled the operation of the corporation to the degree that he should be viewed as its alter ego").

Day's second argument in support of dismissing the tortious interference claim rests on the requirement that "[w]here the defendant is a corporate official acting in the scope of his corporate responsibilities, a plaintiff has a heightened burden of showing the improper motive or means constituted actual malice, that is, a spiteful, malignant purpose, unrelated to the legitimate corporate interest." Weiler v. PortfolioScope, Inc., 469 Mass. 75, 84 (2014) (internal quotation marks omitted); see Psy-Ed Corp. v. Klein, 459 Mass. 697, 718–19 (2011) (concluding that

"economic coercion" did not amount to actual malice). The only corporate position associated with Day for Rival is as "Secretary of the Commonwealth Signatory," which does not appear to indicate any official position or duties that would allow the Court to conclude at this juncture that Day is a corporate official for the purpose of requiring a showing of actual malice for the tortious interference claim.

        a)      <u>Applicability of the NuVasive PIIA</u>

Seeking to invalidate the NuVasive PIIA in its entirety, Day argues that NuVasive's position that the NuVasive PIIA's arbitration clause is unenforceable estops NuVasive from basing any other claim on the NuVasive PIIA. Day, D. 41 at 7-8. The NuVasive PIIA, however, contains a severability provision that reads in relevant part, "[i]f any provision of this Agreement (other than Sections VI and VII, which will be modified and/or reformed as set forth therein) or application of it . . . shall be held by a court of competent jurisdiction to be unenforceable, or void, the remainder of this Agreement . . . shall remain in full force and effect." D. 1-1 at 10 (Section XI). Thus, even if the arbitration clause is unenforceable, the other clauses, including but not limited to the non-solicitation and non-competition clauses, Sections VI and VII, would remain in effect. <u>See, e.g.</u>, <u>Davis v. Dawson, Inc.</u>, 15 F. Supp. 2d 64, 118 (D. Mass. 1998); <u>see also</u> Fed. R. Civ. P. 8(d)(2) (providing that a "party may set out 2 or more statements of a claim . . . alternatively" and if a party does so, "the pleading is sufficient if any one of them is sufficient"). Accordingly, NuVasive is not barred from relying upon the NuVasive PIIA.

    2.    *Breach of Contract Claim*

Day makes several arguments as to the insufficiency of NuVasive's pleadings with respect to alleged violations of the non-competition and non-solicitation provisions of the NuVasive PIIA: 1) NuVasive has not established that Alphatec is a "Conflicting Organization"; 2) NuVasive

acknowledges that Day can work for Alphatec;[3] 3) NuVasive's allegations with respect to Day's soliciting of former customers lack specificity or a claim of damages; and 4) NuVasive's complaint lacks facts to support a claim for breach of the employee non-solicitation provisions of the PIIA. Day, D. 41 at 8-12.

Under Delaware law, which governs the interpretation and enforcement of the NuVasive PIIA, D. 1-1 at 11; D. 25 at 6-9 (rejecting Day's argument that Delaware law should not apply to the interpretation and enforcement of the NuVasive PIIA) the elements of a breach of contract claim are "first, the existence of the contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, the resultant damage to the plaintiff." VLIW Tech, L.L.C. v. Hewlett–Packard Co., 840 A.2d 606, 612 (Del. 2003).[4] NuVasive, in its complaint, alleges the existence of a contract between itself and Day, the NuVasive PIIA, with enforceable non-competition and non-solicitation provisions, breach of the NuVasive PIIA's non-competition and non-solicitation provisions through Day's solicitation of customers within his former sales territory on behalf of an organization, Alphatec, which NuVasive alleges is a competitor with respect to the same customers that Day called upon during his affiliation with NuVasive, and alleged recruitment of Richard with resulting damages to NuVasive from Day's conduct. These allegations are sufficient to make the breach of contract claim "plausible on its face," García-Catalán, 734 F.3d at 103 (citation omitted) as to each of the contentions above, and NuVasive's claim survives Day's motion to dismiss.

---

[3] This argument does not aid Day here because the alleged breach is Day and Richard's solicitation of their former customers, not the mere fact that they currently work for Alphatec.

[4] Under Massachusetts law, which the Court applies to the Rival PIIA below, the elements are the same. Coll v. PB Diagnostic Sys., Inc., 50 F.3d 1115, 1122 (1st Cir. 1995) (applying Massachusetts law).

### 3. Injunctive Relief Claim

Day points out, correctly, that a request for injunctive relief is not an independent cause of action. Payton v. Wells Fargo Bank, N.A., No. 12-11540-DJC, 2013 WL 782601, at *6 (D. Mass. February 28, 2013) and cases cited. NuVasive acknowledges same but urges the Court to read Count III in conjunction with Count II rather than as a separate count. The Court will dismiss Count III as a stand-alone claim but the requested injunctive relief will remain as part of NuVasive's prayer for relief if NuVasive prevails.

### B. Richard's Motion to Dismiss

#### 1. Breach of Contract Claim

Richard's arguments that NuVasive has failed to plead a plausible breach of contract claim mirror Day's arguments and fail for the same reason. NuVasive's complaint against Richard creates, at least, a plausible inference that there exist two contracts between Richard and NuVasive and that Richard has breached those contracts at least through his solicitation of his former NuVasive customers, thereby damaging NuVasive. Richard, D. 1 at ¶¶ 35-40. Accordingly, this breach of contract claim also survives the motion to dismiss.

##### a) Massachusetts Non-Competition Act

As part of his argument in support of dismissal of Count I, Richard invokes the recently enacted Massachusetts Noncompetition Agreement Act ("MNCA"), Mass. Gen. Laws c. 149, § 24L. D. 28 at 7-8. Given that the MNCA applies only to agreements entered on or after October 1, 2018, it may be only be invoked as to the Rival PIIA, allegedly entered into in January 2019, Richard, D. 1-2 at 12, and governed by Massachusetts law, id. at 11, but not the NuVasive PIIA which was entered into in January 2018 and is governed by Delaware law. See D. 25 at 6-10. Even as to the Rival PIIA, the MNCA, however, only applies to a narrowly defined subset of non-

competition agreements as it expressly excludes "covenants not to solicit or hire employees of the employer" or "covenants not to solicit or transact business with customers, clients or vendors of the employers." Id. at § 24L(a) (defining "noncompetition agreement"). Accordingly, even assuming that the MNCA even applies to the Rival PIIA, the agreement's provisions at least as to the non-solicitation clause are exempt from the MNCA's provisions. Moreover, since NuVasive's breach of contract claim against Richard relies not just upon the Rival PIIA, but also on the NuVasive PIIA (which is not subject to the MNCA), this claim survives the motion to dismiss.

### 2. *Injunctive Relief Claim*

As it did above with respect to Day's motion to dismiss, the Court will dismiss Count II of the Richard's complaint as a stand-alone claim but the requested injunctive relief will remain as part of NuVasive's prayer for relief if NuVasive prevails.

## VI. Conclusion

For the aforementioned reasons, the Court DENIES IN PART Day's motion to dismiss, Day, D. 40, and DENIES IN PART Richard's motion to dismiss, Richard, D. 27, allowing both only as to the stand-alone claims for injunctive relief, Count III in the Day complaint and Count II in the Richard complaint.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge