# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **NUVASIVE, INC.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No. 1:19-cv-10800-DJC** |
| | ) | |
| **TIMOTHY DAY** | ) | **LEAVE TO FILE GRANTED** |
| | ) | **MAY 12, 2020** |
| **Defendant.** | ) | |
| _____ | ) | |

## NUVASIVE, INC.'S REPLY IN SUPPORT OF ITS MOTION
## FOR SANCTIONS FOR SPOLIATION OF EVIDENCE

For its reply, Plaintiff NuVasive, Inc. ("NuVasive") states:

## I.      DEFENDANT FAILS TO DISPUTE SEVERAL POINTS IN THE MOTION.

Defendant ignores crucial points NuVasive addresses in its Motion. Without limitation, Defendant does not dispute he reasonably should have anticipated litigation—triggering his obligation to preserve evidence—upon receipt of the April 1, 2019, Litigation Hold. (Mem., ECF 126, pp. 8-9).[1] Nor does he dispute the Litigation Hold obligated him to preserve ESI, including text messages. (*Id.* at pp. 2-3). Critically, Defendant is silent about his failure to take any steps–much less reasonable ones–to preserve ESI after receiving notice of the likelihood of litigation. (Dep. T. Day, Doc. 126-6, 138:2–138:5). Further, he fails to address why he performed a factory reset on his NuVasive-issued iPad prior to returning it or whether his August 2019 discovery of the 30-day text deletion applies to his Alphatec iPhone. (Mem., ECF 126, pp. 3, 12-13, n. 1, 3).

## II.      DEFENDANT'S RESPONSE MISSTATES FACTS AND LAW.

Defendant's Response also contains several misstatements.  First, Defendant erroneously claims NuVasive did not show the existence of relevant text messages before his intentional

---

[1] This obligation likely arose much earlier. However, since the majority of relevant events occurred after April 1, 2019, this date is sufficient to grant NuVasive its requested relief.

destruction. (Resp., ECF 129, pp. 3, 5). Indeed, the evidence in the record conclusively establishes these messages existed. (2d Decl. T. McFarland, Doc. ECF 126-9, ¶¶ 5-6).[2]

Next, Defendant's statement that NuVasive "chose not to subpoena, depose or otherwise retrieve [the spoliated messages] from the other parties on the text message exchanges" is not true. (Resp., ECF 129, p. 5). NuVasive deposed Behrmann and Richard (who both testified they activated the 30-day automatic delete function on their iPhones) and subpoenaed documents from Alphatec to no avail. (Mem., ECF 126, pp. 5-6). Further, Defendant's position on this issue is fatally flawed in that NuVasive cannot subpoena the "information from the other parties on the text message exchanges" when the messages provide the information for identifying those parties.[3]

Third, Defendant falsely claims he "took no affirmative steps to destroy his text messages." Twenty-three days after receiving notice of his obligation to preserve evidence (and two days after being sued) Defendant took the affirmative step of replacing his Personal iPhone with the Replacement iPhone without preserving any requested information. (Mem., ECF 126, pp. 13-15). Respectfully, this is an affirmative step, as the record contains no evidence indicating replacing the iPhone was a matter of "routine practice" or even necessary. However, the evidence does show that Defendant, after NuVasive instructed him not to do so, discarded his Personal iPhone that contained the requested ESI without preserving it. This is not "simply mov[ing] to a new phone." (Resp., ECF 129, p. 6). It is intentionally destroying relevant evidence.[4]

---

[2] Defendant testified throughout his deposition as to text messages that are relevant to this litigation (that he failed to produce). (*E.g.*, Dep. T. Day, attached as **Exhibit 1**, 80:15–21, 135:1–137:18, 176:3–10, 183:3–20). These excerpts do not even encompass those messages NuVasive *was* able to recover from other sources. To claim that NuVasive has not established the existence of spoliated text messages is simply absurd.

[3] Defendant would have NuVasive serve subpoenas on and depose the exact customers for whose business it is now competing with Defendant. Respectfully, if anyone should be forced to subpoena these non-party customers, it should be the party who: (i) actually knows the identity of the recipients; and (ii) necessitated their issuance (i.e., Defendant).

[4] Defendant mischaracterizes his preservation obligation when he states "[t]here is no testimony that he affirmatively turned on the auto-delete setting in anticipation of litigation." (Resp., ECF 129, p. 6). Defendant affirmatively activated the 30-day delete function at some point—as this is not the iPhone's default setting. (Decl. R. Clayton, ECF 126-8, ¶ 7). His obligation was to affirmatively *deactivate* the function once litigation became reasonably anticipated.

Finally, Defendant devotes a significant portion of his Response arguing that NuVasive cannot show any prejudice due to Defendant's spoliation. While this is patently false as NuVasive is denied highly relevant communications weighing directly on the issues at stake in this litigation, Defendant's analysis misses the mark since, pursuant to Rule 37(e)(2), "there is no need separately to establish prejudice." *Wai Feng Trading Co. v. Quick Fitting, Inc.*, C.A. 13-33WES; C.A. 13-56WES, 2019 U.S. Dist. LEXIS 4113, at *22 (D.R.I. Jan. 7, 2019). NuVasive recognizes that it seeks, in the alternative, relief pursuant to Rule 37(e)(1), but a finding of prejudice is unnecessary to impose sanctions pursuant to Rule 37(e)(2) when, as is the case here, the spoliating party acted with an intent to deprive the moving party of the use of the information in the litigation.

### III.    THE CASE LAW DEFENDANT CITES DOES NOT SUPPORT HIS POSITION

The cases Defendant cites do not help his cause. First, Defendant's reliance upon *Hefter Impact Techs, LLC v. Sport Maska, Inc.*, C.A. No. 15-13290-FDS, 2017 U.S. Dist. LEXIS 122122 (D. Mass. Aug. 3, 2017), for the proposition that a finding of "bad faith" is necessary to impose sanctions is misplaced. (Resp., Doc. 129, p. 4). This portion of *Hefter* addresses the spoliation of physical notebooks, and therefore, is outside the bounds of Rule 37(e).[5]

The portions of *Hefter* which address ESI actually support NuVasive's position and belie Defendant's. In that case, the court determined there was neither prejudice—pursuant to Rule 37(e)(1)—nor intent to deprive—pursuant to Rule 37(e)(2)—as the only lost ESI was that of one (of multiple) custodians for a one-year period after her laptop was wiped pursuant to a "policy to wipe information from the laptops of employees taking maternity leave." *Id.* at *20.[6]  In so

---

[5] Likewise, Defendant's reliance upon *Talavera v. Ford Motor Co.*, 932 F. Supp. 2d 252, 256 (D.P.R. 2013), in arguing that the Court should balance the prejudice NuVasive is suffering versus his degree of fault in destroying the ESI is inapposite since that case dealt with the spoliation of an allegedly faulty vehicle in a products liability action. Rule 37(e) did not apply to that case either since the destroyed evidence was not ESI.

[6] The defendant in that case was a Canadian company, and, pursuant to Canadian law, when an employee takes maternity leave, she technically ceases her employment with the company and becomes employed by the Canadian government. *Hefter Impact Techs.*, 2017 U.S. Dist. LEXIS 122122, at **12-13.

holding, the court found the alleged spoliator: (i) promptly instituted a litigation hold upon notice of potential litigation; (ii) updated that litigation hold three times as the claims evolved; (iii) took "snapshots" of document custodians' email mailboxes at pertinent times; and (iv) operated pursuant to its documented maternity leave destruction policy. *See id.* at **7-13. It also found the lost ESI (from 2014) was irrelevant because the relevant time period ended in 2013. *Id.* at **20-21. Nevertheless, the *Hefter* court still imposed monetary sanctions in the form of attorney's fees since the defendant's general inattention "complicated the discovery process" and seeking sanctions "was an entirely reasonable response under the circumstances." *Id.* at *24.

Respectfully, the situation at bar could not be more inapposite. Defendant admits he neither instituted any sort of litigation hold nor destroyed his text messages pursuant to any policy. To the contrary, he failed to preserve this ESI twenty-three days after being specifically instructed to preserve them and two days after NuVasive filed suit.

Likewise, *Wai Feng Trading Co.*, supports the imposition of sanctions in this instance. For example, the majority of the ESI at issue in that case was lost (if it ever existed in the first place) years prior to any obligation to preserve arose. *See generally*, 2019 U.S. Dist. LEXIS 4113, at **28-44. The principle *Wai Feng* does make clear is that:

> [I]ntent may be inferred. For example, courts have inferred intent based on evidence that ESI once existed and would have been material to a fact issue pivotal to the outcome of the case; that the spoliator, aware of its content and materiality, engaged in an affirmative act to cause it to be lost; that the spoliating party knew of its duty to preserve at the time of the act; and that the affirmative act causing the loss cannot be credibly explained as it amounts to deviation from established protocols.

*Id.* at *23. When a preservation letter is sent that identifies pertinent electronic devices "and identifies the ESI in it to be preserved, after which the recipient of the letter destroys the [device] with no attempt to preserve the ESI, a finding of intent is warranted." *Id.* at **23-24. This is precisely the case where intent should be inferred. Here, NuVasive placed Defendant on notice of

his preservation obligation and Defendant knew material, relevant communications existed on his iPhone.  Yet he took the affirmative act of replacing that phone without ensuring the messages would not be lost and then failed to take any steps, such as forensically examining the device, to attempt to recover the lost ESI.

## IV.      DEFENDANT ACTED WITH THE REQUISITE INTENT TO DEPRIVE

"Intent is rarely proved by direct evidence, and a district court has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the witnesses in a particular case, and other factors."  *Paisely Park Enters. v. Boxill*, 330 F.R.D. 226, 236 (D. Minn 2019).  NuVasive restates this principle because—in addition to the evidence indicative of intent detailed above—Defendant's credibility and motive weigh substantially in favor of sanctions pursuant to Rule 37(e)(2).[7]

Put simply, Defendant is an incredible witness.  For example, when questioned at his November 21, 2019, deposition about the last trip he took with Dr. Paul Glazer, Defendant identified a January 2019 trip to Naples, Florida. (**Exhibit 1**, 27:14–31:9).  However, he failed to disclose that on July 25, 2019, Defendant, Dr. Glazer, and their respective wives traveled to Alphatec's California headquarters, where Defendant presented his business plan to Alphatec's board of directors. (July 25, 2019, Email, attached as **Exhibit 2**; July 24, Email from Day to Miles, attached as **Exhibit 3**; Aug. 2, 2019, Email from McGinnis, attached as **Exhibit 4**). He also failed to mention that they (along with Dr. Glazer's stepdaughter) then traveled to Napa, California, on July 26-28, 2019, with Pat Miles (Alphatec's Chairman and CEO) and his wife.[8]  (May 24, 2019,

---

[7] Defendant's motive here cannot be simpler, which is to destroy incriminating communications.
[8] Alphatec, which is indemnifying Defendant in this lawsuit, reimbursed Defendant for at least some of the "business expenses" he incurred on this trip.

Email, attached as **Exhibit 5**; Miles Itinerary Email, attached as **Exhibit 6**).[9]  Respectively, this deceptive testimony is evidence of Defendant's intent to deprive.

Finally, the simple fact that Defendant failed to take any action to recover the lost ESI from his Personal iPhone supports a finding that his intent was to deprive NuVasive of it.  (2d Decl. R. Clayton, attached as **Exhibit 8**, ¶¶ 6-12).  Indeed, there is no evidence that Defendant sought a forensic examination of that device in hopes of recovering the spoliated ESI.

## V.    CONCLUSION

For the reasons set forth in this Reply and in the Motion, NuVasive respectfully requests the imposition of sanctions against Defendant pursuant to Federal Rule of Civil Procedure 37(e).

---

[9] This trip occurred after the Court enjoined Defendant from soliciting Dr. Glazer and others. After returning to Boston, Dr. Glazer emailed a picture to Defendant that he took outside a Napa restaurant of Defendant and his wife.  (July 31, 2019, Email and Picture, attached as **Exhibit 7**).

Respectfully submitted,


/s/ *M. Thomas McFarland*
Holly M. Polglase (BBO #553271)
hpolglase@hermesnetburn.com
Michael S. Batson (BBO #648151)
mbatson@hermesnetburn.com
HERMES, NETBURN, O'CONNOR & SPEARING, P.C.
265 Franklin Street, Seventh Floor
Boston, MA 02110-3113
Tel: (617) 728-0050
Fax: (617) 728-0052

Christopher W. Cardwell, Esq. (*pro hac vice*)
Mary Taylor Gallagher *(pro hac vice)*
M. Thomas McFarland, Esq. (*pro hac vice*)
GULLETT, SANFORD, ROBINSON & MARTIN, PLLC
150 Third Avenue South, Suite 1700
Nashville, TN 37201
(615) 244-4994 (Telephone)
(615) 256-6339 (Facsimile)
ccardwell@gsrm.com
mtgallagher@gsrm.com
tmcfarland@gsrm.com

*Attorneys for Plaintiffs NuVasive, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Local Rules 5.2(b)(2) and 5.4 of the Local Rules of the United States District Court for the District of Massachusetts, I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that paper copies will be sent by first-class mail to those indicated as non-registered participants, if any, on May 14, 2020.

/s/ *M. Thomas McFarland*
M. Thomas McFarland