<u>UNITED STATES DISTRICT COURT</u>
<u>DISTRICT OF MASSACHUSETTS</u>

| | | |
|---|---|---|
| NUVASIVE, INC. | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:19-CV-10800 |
| | ) | |
| vs. | ) | |
| | ) | |
| TIMOTHY DAY | ) | |
| | ) | |
| Defendant | ) | |
| NUVASIVE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:19-CV-10995 |
| | ) | |
| vs. | ) | |
| | ) | |
| ADAM RICHARD, | ) | |
| | ) | |
| Defendant | ) | |

<u>**DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY OF MISTY L.**</u>
<u>**DECKER, CPA AND SUPPORTING MEMORANDUM OF LAW**</u>

Pursuant to Federal Rules of Civil Procedure 26 and 37, and Federal Rules of Evidence 104, 403, and 702, Defendants Timothy Day ("Day"), and Adam Richard ("Richard")(collectively, "Defendants"), by and through undersigned counsel respectfully move this Court to exclude the expert testimony of Plaintiff's proposed expert, Misty L. Decker, CPA. Ms. Decker's opinions and testimony are neither relevant nor reliable pursuant to the standards set forth in *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993), and its progeny. Defendants respectfully request a *Daubert* hearing to determine the admissibility of Ms. Decker's testimony.

**I.      Introduction and Factual Background.**

Plaintiff NuVasive, Inc. ("NuVasive") bears the burden of establishing the reliability and admissibility of Ms. Decker testimony. At present, NuVasive has not met that burden because

1

Ms. Decker's opinion and testimony does not meet the requirements of reliability and helpfulness for admissibility under *Daubert* and its progeny.

In the instant case, Ms. Decker's opinions and testimony should be excluded inasmuch as she: (1) relies on inadequate and insufficient data and instead bases her projections on an incomplete internal marketing projection prepared by Mr. Day; (2) ignores actual sales data available for the alleged loss period; (3) ignores evidence in record regarding variable factors like doctors' freedom of choice and lack of exclusivity with NuVasive; (4) blindly accepts NuVasive's subjective opinions for future sales projections, costs and expenses without conducting an independent investigation; and (5) was not timely and adequately disclosed as an expert witness in the Adam Richard matter. These speculative assumptions render Ms. Decker's opinions unreliable and inadmissible. Similarly, Ms. Decker's failure to provide a methodology for the trier of fact to calculate damages once factual decisions are made, render her opinion useless. For these reasons, this Court should preclude Ms. Decker's testimony under Rules 104, 403, and 702 of the Federal Rules of Evidence

## II.   Argument and Citation to Authority.

### a.   Legal Standard for admissibility of expert testimony.

*Federal Rule of Evidence 702* permits "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" to provide opinion testimony in limited circumstances. Expert opinion testimony is admissible if: (1) "the expert's... specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; (2) "the testimony is based on sufficient facts or data"; (3) "the testimony is the product of reliable principles and methods"; and (4) "the expert has reliably applied the principles and methods to the facts of the case." *Id.* "[T]he Federal Rules of Evidence 'assign to the trial judge the task of ensuring

that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."

*Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999)*

(quoting *Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 597, 113 S. Ct. 2786, 125 L. Ed. 2d*

*469 (1993))*. Pursuant to *Daubert*, the determination of admissibility is uniquely entrusted to the

district court, which must act as "gatekeeper and ensure that the expert is qualified before admitting

expert testimony." *Poulis-Minott v. Smith,* 388 F. 3d 354, 359 (1st Cir. 2004). The burden of laying

a proper foundation and demonstrating admissibility is on the proponent of the expert witness.

*United States v. Tetioukhine,* 725 F. 2d 1, 6 (1st Cir. 2013). The proponent must establish

admissibility by a preponderance of the evidence that the testimony is reliable. *In re Neurontin*

*Mktg,* 612 F. Supp. 2d 116, 130 (D. Mass. 2009).

The trial court must determine (1) if the proposed expert is sufficiently qualified; (2)

whether the proposed expert's testimony is reliable; and (3) whether the proposed testimony will

assist the trier of fact. *Butler v. Sigma-Aldrich, Inc.,* 2006 U.S. Dist. LEXIS 107578, *7-8 (D.

Mass. 2006 January 31, 2006) citing to *Mitchell v. United States,* 141 F. 3d 8, 15 (1st Cir. 1998).

The advisory committee notes to FRE Rule 702 provide additional factors including (1) whether

the expert's testimony concerns "matters growing naturally and directly out of research they have

conducted independent of the litigation, or whether they have developed their opinions expressly

for purposes of testifying;" (2) "[w]hether the expert has adequately accounted for obvious

alternative explanations;" and (3) "[w]hether the expert is being as careful as he would be in his

regular professional work outside his paid litigation consulting." Fed. R. Evid. 702, Advisory

Committee Notes (2000 Amends.) (quotations omitted). These factors are not exhaustive, and the

trial judge enjoys broad latitude to use other factors to evaluate reliability. *Kumho Tire Co. v.*

*Carmichael, 526 U.S. 137,141-42, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999)*

b.  <u>This Court should exclude Ms. Decker's expert testimony under Rule 702, because NuVasive has not established that her methodology is reliable or that the underlying data is sufficiently accurate to support her particular opinions.</u>

An expert's conclusion must be arrived at in a scientifically sound and methodologically reliable manner. *BASF Corp. v. Sublime Restorations, Inc.,* 880 F. Supp. 2d 205, 2013 (D. Mass. 2012). An expert must be able to explain the dependability of the data they relied on and explain how the cumulation of the data was consistent. *Id.* citing to *Zachar v. Lee,* 363 F. 3d 70m 76 (1st Cir. 2004). An expert's opinion is undermined by significant analytical gaps between the data and the opinion offered. *Abbott Biotechnology Ltd. V. Centocor Ortho Biotech, Inc.,* 2014 U.S. Dist. LEXIS 175470, *16 (D. Mass. Dec. 19, 2014). Moreover, the expert's opinion should be excluded where the ultimate opinion is based on unsupported assumptions. *Albert v. Warner-Lambert Co.,* 2002 U.S. Dis. LEXIS 7242, *4 (D. Mass Apr. 24, 2002) citing to *General Electric Co. v. Joiner,* 522 U.S. 136, 146 (1997). The requirement for reliability cannot be met by an expert's self-serving assertions, but must instead be subject to objective, independent validation of the methodology. *Lawes v. CSA Architects & Eng'rs, LLP,* 963 F. 3d 72, 98 (1st Cir. 2020). The connection of the opinion to the existing data cannot be only by the *ipse dixit* of the expert. *Id.* Instead, the court should evaluate the data offered to support the opinions to determine if there is adequate support in the data to render the opinion reliable. *Id.* at 99. Expert opinion on economic damages must be excluded as speculative when they are based on unrealistic assumptions or lack a sufficient factual foundation. *Flebotte v. Dow Jones & Co.,* 200 U.S. Dist. LEXIS 19862, * 4-5 (D. Mass. Dec. 22, 2000).

Here, Ms. Decker's opinion is not based on sufficient facts or data which renders it unreliable. Ms. Decker's lost profits opinion was primarily based on an internal marketing projection email from Day as to projected 'worst case' and 'best case' scenario. *See* July 23, 2020

Decker Deposition ("2020 Decker Depo."), attached hereto as **Exhibit 1**, at p. 56, 20-25, p. 57, 1-13. Ms. Decker did not even attempt to review how accurate Mr. Day's previous years' sales projections were. *Id.* Additionally, Ms. Decker did not inquire or verify what assumptions Mr. Day made, how his marketing projections were calculated, what data it was based on, or how accurate his previous projections were. *Id.* Instead, Ms. Decker "corroborated" his projections against NuVasive's historical sales pattern. *Id.* at p. 57, 19-25, p. 58, 1-5; *see also* June 2, 2021 Decker Deposition ("2021 Decker Depo.") attached hereto as **Exhibit 2**., at p. 47, 12-25. Additionally, Ms. Decker relied on Day's projections despite having actual sales data for later years. *See* 2021 Decker Depo., at p. 48, 20-25, p. 49, 1-8, 17-25, p. 50, 1-8. Ms. Decker's reliance on Mr. Day's 'projections' while simultaneously ignoring: (1) Mr. Day's testimony that these internal projections were incomplete, (2) available historical sales pattern data, and (3) actual sales data available renders her opinion unreliable. *Id.*

Here, despite having the benefit of the actual sales data from the loss period for the new company Defendants worked for, Ms. Decker ignores it and does not account for actual sales in her lost profit calculations. Instead, Ms. Decker relies on NuVasive's opinion that the actual sales data cannot be used as a reference and ignores actual sales data in its entirety, thus overestimating lost profits by as much as $700k to $1.1MM. *See* Dopp Deposition ("Dopp. Depo."), attached hereto as **Exhibit 3**, at Ex. 1, p. 16, ¶ 46. The unreliability of the underlying data used by Ms. Decker is further highlighted by her admission that biologics historical data is not maintained by doctor and thus cannot be apportioned by sales representative, even though her opinion *did* arbitrarily apportion a prorated share amount. *See* 2021 Decker Depo. at p. 46, 5-21. Despite this deficiency, Ms. Decker attributes $372,235 in lost profits to biologics for Mr. Day and Mr. Richard. *See* March 15, 2021 Decker Report, attached hereto as **Exhibit 4**, at Id. at Ex. D-1. The

fact that her own chosen methodology cannot be duplicated in the same manner for this subset of lost profits, or for each independent Defendant, supports Defendant's request to exclude her testimony.

Additionally, Ms. Decker's willful ignorance of testimony in the record in favor of her client's assumptions renders her expert opinion unreliable and inadmissible. Ms. Decker readily admits that she did not speak or interview any of the physicians, assistants, nurses, or administrative and office staff for any of the doctors at issue. *See* 2021 Decker Depo., at p. 10, 18-25, p. 11, 1-9, p. 36, 1-3. Ms. Decker ignores Dr. Glazer's testimony that he did not have an exclusivity contract with NuVasive. *See* 2021 Decker Depo., p. 12, 4-24. Similarly, Ms. Decker further ignores Dr. Glazer's testimony regarding his efforts to obtain approval of Alphatec products at his preferred medical facility over two years prior to Mr. Day leaving NuVasive. *See* 2021 Decker Depo., p. 20, 10-25, p. 21, 1-4, p. 22, 1-25. Likewise, Ms. Decker readily admits that her opinion ignores the various intervening factors as to why Dr. Glazer's sales declined by 65% in 2019, including his testimony that he was having issues with products, patents, and management issues and instead allocates 100% of the losses to Mr. Day. *See* 2021 Decker Depo., p. 31, 8-25, p. 32, 1-5. Ms. Decker further assumes that Dr. Kwon was an exclusive customer of NuVasive despite the lack of an exclusivity contract and her failure to interview Dr. Kwon. *See* 2021 Decker Depo., p. 14, 18-25, p. 15, 4-5, 10-12. Lastly, and most fatal to Ms. Decker's opinion, is that she fails to allocate damages between Mr. Day and Mr. Richard, and instead provides just one number based solely on Mr. Day's incomplete and internal marketing projections. *See* 2021 Decker Depo., p. 34, 1-11, 23-25, p. 35, 1-3.

Moreover, Ms. Decker unreasonably assumes that doctors will continue to purchase products from NuVasive well into the future at Mr. Day's incomplete projected rate despite the

fact that none of the doctors are contractually obligated to purchase any products from NuVasive and remain free to choose any available products in the marketplace. Ms. Decker did not do any independent investigation or testing, instead she relies on NuVasive's subjective opinions regarding market factors and doctor's conduct to project millions in damages without accounting for any known variables in the spinal industry or even the conduct of each individual Defendant. The insufficiency of the data Ms. Decker relies on, coupled with the blind acceptance of NuVasive's subjective projections and assumptions about the future without any external verification or consideration of the relevant industry at play, renders Ms. Decker's expert opinion unreliable. Accordingly, Defendants' motion to exclude Ms. Decker's testimony should be granted.

c.  This Court should exclude Ms. Decker's expert testimony under Rule 702, because her opinions are not helpful to the trier of fact.

In addition to the fatal flaws in Ms. Decker's assumptions and speculations in her expert opinion, Ms. Decker's testimony must be excluded as it would not be helpful to the jury. In the First Circuit, expert testimony must be helpful and assist the trier of fact to understand or determine a fact at issue. *United States v. Diaz,* 300 F. 3d 66, 73 (1st Cir. 2002). In the instant case, the jury is tasked with deciding whether Day and Richard each solicited sales from restricted doctors and facilities and, if yes, what amount of damages are directly attributable to the Defendants' alleged violations of the restrictive covenants. Instead of providing a methodology to allow the jury to determine lost profits for Mr. Day's conduct and lost profits for Mr. Richard's conduct, Ms. Decker ignores all the variables at play and provides an all or nothing lost profits figure without allocating the figures between Mr. Day and Mr. Richard. This "is unfairly prejudicial and likely to lead to jury confusion because it creates the presumption that Defendants Mr. Day and Mr. Richard are jointly 100% responsible for any and all decline in revenue through the alleged loss period without

any ability to adjust or discount any other potential causes and contributing factors. This is particularly troublesome where a party seeking lost profits, must show more than a speculative connection between the defendant's conduct and the alleged damages. *RHA Constr., Inc. v. Scott Eng'g, Inc*., 2013 Del. Super. LEXIS 301, at * (Del. Super., July 24, 2013); *See also Preferred Inv. Servs. V. T&H Bail Bonds, Inc.*, 2013 Del. Ch. LEXIS 190, at *34 (Del. Ch., July 24, 2013)(to recover damages for breach of contract, the plaintiff must show the existence of damages provable to a reasonable certainty, and that the damages flowed from the defendant's breach.)

> d. <u>This Court should exclude Ms. Decker's expert testimony in the Adam Richard litigation due to Plaintiff's failure to timely identify her as an expert witness.</u>

Plaintiff's failure to timely identify and disclose Ms. Decker as its expert witness in the Adam Richard case requires that her testimony be excluded. Fed. R. Civ. Pro. 26(a)(2)(A) requires that the party must disclose the identity of any expert witness and the disclosure must be accompanied by a written report. The written report must contain, amongst other things, a statement of all opinions, basis therefor, all data considered in forming the opinions, and qualifications of the witness. *Id.* These disclosures are to be made at the time and sequence set by the court. *Id.* Here, the parties filed a proposed pretrial schedule requiring disclosure of Plaintiff's experts by August 30, 2019.[1] (*See* R. Doc. 30.)[2] Plaintiff filed an unopposed motion and joint motions to extend the expert disclosure deadlines. (*See* R. Doc. 48, 53, and 59.) On April 24, 2020, the court entered an order extending various deadlines by ninety days, however, the expert witness disclosure deadline was not expressly extended. (*See* R. Doc. 69.)

---

[1] Under Local Rule 26.4, in the absence of a case management order or other judicial order, expert disclosures must be made ninety (90) days prior to the final pretrial conference.
[2] Citations to the Adam Richard record in civil action No. 1:19-CV-10995 are cited as "R. Doc." Citations to the Timothy Day record in civil action No. 1:19-CV-10800 are cited as "D. Doc."

More than a year later, on March 15, 2021, Plaintiff provided Defendant with the "Amended Report of Misty L. Decker" for Timothy Day and Adam Richard. (*See* Ex. 4 hereto.) This report was the first time Plaintiff identified an expert in the Adam Richard litigation, despite being labeled as an Amended Report. Plaintiff's failure to adequately and timely disclose Ms. Decker as an expert in the Adam Richard case requires that her report be stricken and that she be excluded from providing expert testimony in that case.

### III.    Conclusion

NuVasive failed to meet its burden of establishing that Ms. Decker's testimony is admissible. Ms. Decker's acceptance of NuVasive's subjective opinions, assumptions, and future projections, without any outside investigation or verification is insufficient to meet the reliability requirement for admissibility. The speculative nature of Ms. Decker's opinion, coupled with her assumption that Defendants Mr. Day and Mr. Richard are jointly 100% responsible for any decline in revenue through the alleged loss period would not be helpful to the trier of fact. Lastly, Ms. Decker's failure to provide a methodology to permit the jury to calculate damages based on Defendants' conduct or to adjust or discount for any other potential causes and contributing factors, renders her opinion inadmissible.

Accordingly, Defendants respectfully request that Ms. Decker's opinion and testimony be excluded.

### **Local Rule 7.1 Certification**

Counsel for Defendants conferred with Counsel for Plaintiff via electronic mail regarding the relief requested in this Motion. Counsel for Plaintiff **objects** to the relief requested herein.

## <u>REQUEST FOR ORAL ARGUMENT</u>

Defendants Timothy Day and Adam Richard, by and through undersigned counsel, and respectfully request that oral argument be held on Defendants' Motion to Exclude Expert Testimony of Misty L. Decker, CPA. Defendants respectfully submit that oral argument is desired and will assist the court in making a determination. Defendants estimate that approximately one (1) hour will be required for oral argument.

Dated September 15, 2021.

Respectfully submitted,

TIMOTHY DAY
*By his attorneys,*

*/s/ Steven D. Weatherhead*
Steven D. Weatherhead, BBO # 637601
Marathas Barrow Weatherhead Lent LLP
One Financial Center, 15th Floor
Boston, Massachusetts 02111
(617) 830-5458
sweatherhead@marbarlaw.com

*/s/ Bryan E. Busch*
Bryan E. Busch, *Admitted Pro Hac Vice*
Busch Mills & Slomka, LLP
6400 Powers Ferry Road, N.W., Ste. 391
Atlanta, Georgia 30339
Phone: 404-800-4062
bb@bsms.law

## <u>CERTIFICATE OF SERVICE</u>

    I, Bryan E. Busch, hereby certify that this document, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 15, 2021.

*/s/  Bryan E. Busch*
_____
