**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **NUVASIVE, INC.** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | Civil Action No. 1:19-cv-10800-DJC |
| ) | |
| **TIMOTHY DAY** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**NUVASIVE, INC.'S MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR ATTORNEYS' FEES AND COSTS**

By and through counsel of record and pursuant to the Court's August 23, 2021, Report and

Report and Recommendation on Plaintiff's Renewed Motion for Sanctions for Spoliation of

Evidence ("Report and Recommendation") (D.E. 217), and October 14, 2021, Electronic Order

adopting the Report and Recommendation on Plaintiff's Renewed Motion for Sanctions for

Spoliation of Evidence (D.E. 226) ("Spoliation Orders"), Plaintiff, NuVasive, Inc. submits its

Memorandum of Law In Support of its Motion for Attorneys' Fees and Costs.

## I.      INTRODUCTION

On August 23, 2021, Magistrate Judge Kelley entered her Report and  Recommendation,

which the Court adopted on October 14, 2021 (D.E. 226), in which the Court recommended that

"NuVasive be awarded the attorneys' fees and expenses it incurred in prosecuting its initial

motions for sanctions and its renewed motions, including costs associated with NuVasive's

attempts to recover the lost evidence." (D.E. 217, p. 19).

NuVasive respectfully requests that the Court award it $127,214.50 in fees and $2,103.85

in expenses. Additionally, NuVasive requests that the Court permit it to file a supplemental

declaration with respect to time expended in December 2021 preparing this Fee Motion.

858427.2/020190350

## II.     FACTS AND PROCEDURAL HISTORY[1]

Pursuant to Fed. R. Civ. Pro. 10(c), NuVasive incorporates the extensive procedural and factual history of this matter and the lengths it went to in attempting to obtain the spoliated evidence in its Renewed Motion for Sanctions for Spoliation of Evidence (D.E. 195). As such, NuVasive only provides a brief synopsis of the procedural history in this matter to illustrate the depth and breadth of work its counsel performed to secure the favorable ruling on its Motion.

On March 30, 2019, Defendant Timothy Day notified NuVasive of his intent to prematurely terminate Rival Medical, LLC's business relationship with NuVasive. (Am. Compl, D.E. 80, ¶ 20; D.E. 80-4; Ans. Am. Compl., D.E. 84, ¶ 20). NuVasive sued Defendant on April 22, 2019, for failing to honor his contractual non-competition and non-solicitation obligation to NuVasive and for tortiously interfering with the contract between NuVasive and Rival Medical. (D.E. 1).

On April 24, 2020, NuVasive filed its Motion and Memorandum for Sanctions for Spoliation of Evidence ("Original Motion") (D.E. 125). Defendants filed a response on May 8, 2020. (D.E. 129). On May 11, 2020, NuVasive requested leave to file a reply, which this Court granted on May 12, 2020. (D.E. 130; D.E. 131).  NuVasive filed its reply on May 14, 2020 ("May 14, 2020, Reply"). (D.E. 132). This Court heard arguments on the Original Motion on June 1, 2020. (D.E. 134).

After the June 1, 2020, Hearing, on July 16, 2020, NuVasive filed its Supplemental Memorandum in Support of its Motion for Sanctions for Spoliation of Evidence ("Supplemental Memorandum"), which detailed, among other things, NuVasive's attempts to recover Defendant's

---

[1] NuVasive incorporates the extensive procedural and factual history of this matter and the effort and resources it expended  in attempting to obtain the spoliated evidence that are detailed in its Renewed Motion for Sanctions for Spoliation of Evidence (D.E. 195).

text messages with Dr. Paul Glazer. (D.E. 141). Defendant filed his response to NuVasive's
Supplemental Memorandum on August 6, 2020. (D.E. 151). On August 7, 2020, NuVasive
requested leave to file a reply (D.E. 153), which this Court granted. (D.E. 154). Subsequently,
NuVasive filed its reply ("August 2020, Reply"). (D.E. 155).  On February 12, 2021, the Court
denied the Original Motion without prejudice as to refiling after the decision on the outstanding
summary judgment motions. (D.E. 184).

Consistent with the Court's direction, NuVasive renewed its Motion on April 20, 2021
("Renewed Motion"). (D.E. 195). Defendant filed his response on May 4, 2021 (D.E. 199).  Once
again, NuVasive filed a motion for leave to reply (D.E. 201), which this Court granted on May 13,
2021 (D.E. 203). On May 18, 2021, NuVasive filed its Reply ("May 2021, Reply") (D.E. 204).
The Court heard the Renewed Motion on June 28, 2021.

On August 23, 2021, Magistrate Judge Kelley entered her Report and Recommendation,
holding that Defendant spoliated evidence with the intent to deprive NuVasive of its use in this
litigation and recommended that "NuVasive be awarded the attorneys' fees and expenses it
incurred in prosecuting its initial motions for sanctions and its renewed motions, including costs
associated with NuVasive's attempts to recover the lost evidence." (D.E. 217, p. 19).  Defendant
objected to the Report and Recommendation ("Objection"), (D.E. 218), to which NuVasive replied
on September 17, 2021 ("Reply to Objection"). (D.E. 220).

On October 4, 2021, the Court informed the parties that it would hear arguments on the
objection to the Report and Recommendation at the October 13, 2021, status conference. (D.E.
223).  After doing so, the Court entered its October 14, 2021, Electronic Order that adopted, in
*toto*, Judge Kelley's Report and Recommendation. (D.E. 226).

### III.   LAW AND ARGUMENT

Courts in the First Circuit employ the "lodestar method" to determine the reasonableness of attorneys' fees. *Hefter Impact Techs., LLC v. Sport Maska, Inc.*, Civil Action No. 15-13290-FDS, 2017 U.S. Dist. LEXIS 194706, at *4 (D. Mass. Nov. 28, 2017). Generally, the lodestar approach involves "multiplying the number of hours productively spent by a reasonable hourly rate to calculate a base figure." *Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 336 (1st Cir. 2008) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  The party seeking an award of fees "bears the burden of establishing and documenting the hours expended and the hourly rates charged." *Cheng v. Romo*, C.A. No. 11-10007-DJC, 2014 U.S. Dist. LEXIS 28374, at *2 (D. Mass. Mar. 6, 2014) (citing *Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 340 (1st Cir. 2008)).

The first step in calculating the lodestar is "to calculate the number of hours reasonably expended by the attorneys for the prevailing party, excluding those hours that are 'excessive, redundant, or otherwise unnecessary.'"  *Hefter Impact Techs., LLC v. Sport Maska, Inc.*, Civil Action No. 15-13290-FDS, 2017 U.S. Dist. LEXIS 194706, at *5 (D. Mass. Nov. 28, 2017) (quoting Hensley, 461 U.S. at 434). However, in determining the reasonableness of time expended, the First Circuit explained that:

> [C]ourts must be careful not to throw out the baby with the bath water. Given the complexity of modern litigation, the deployment of multiple attorneys is sometimes an eminently reasonable tactic. Consequently, the mere fact that more than one lawyer toils on the same general task does not necessarily constitute excessive staffing.  Effective preparation and presentation of a case often involve the kind of collaboration that only occurs when several attorneys are working on a single issue.

*Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 297 (1st Cir. 2001) (internal cites omitted).

Second, the court must determine a reasonable hourly rate.  To do so, the court "benchmark[s] to the 'prevailing rates in the community' for lawyers of like 'qualifications,

experience, and specialized competence.'" *Hefter Impact Techs., LLC v. Sport Maska, Inc.*, Civil

Action No. 15-13290-FDS, 2017 U.S. Dist. LEXIS 194706, at *5 (D. Mass. Nov. 28, 2017)

(quoting *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 295 (1st Cir. 2001)).

After determining the hours and reasonable hourly rate, "the court may adjust the lodestar

upward or downward" based on the following factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hefter Impact Techs., LLC v. Sport Maska, Inc.,* C.A. No. 15-13290-FDS, 2017 U.S. Dist. LEXIS

194706, at *5-6 (D. Mass. Nov. 28, 2017) (quoting *Diaz v. Jiten Hotel Mgmt.*, 741 F.3d 170, 177

n.7 (1st Cir. 2013)).

In submitting a motion for attorney fees and expenses, the party requesting the award must

"specify the nature of the services provided in order to ensure that there is a proper basis for

recovery of the expenses sought." *Hilsinger Co. v. Eyeego, LLC*, Civil Action No. 13-cv-10594-

IT, 2015 U.S. Dist. LEXIS 192491, at *3 (D. Mass. Nov. 16, 2015).  A court's award may be based

upon the affidavits of counsel, "'so long as they are sufficiently detailed to enable the court to

consider all the factors necessary in setting the fees.'" *Hilsinger Co. v. Eyeego, LLC*, Civil Action

No. 13-cv-10594-IT, 2015 U.S. Dist. LEXIS 192491, at *3 (D. Mass. Nov. 16, 2015) (quoting

*Henry v. Gill Indus., Inc.*, 983 F.2d 943, 946 (9th Cir. 1993)).  Moreover, courts in the First Circuit

recognize that sworn statements of counsel and summaries of the contemporaneous billing records

are sufficient to enable a court's review.

5

A.  **The Court Should Award NuVasive All of Its Requested Attorneys' Fees.**

The Court should award NuVasive the fees and expenses set forth in this Fee Motion as expressly provided by the Report and Recommendation.  As set forth in detail below, NuVasive's recoverable fees and expenses generally fall into one of three categories: (i) those incurred prosecuting its Original Motion and Renewed Motion, and all attendant filings thereto; (ii) those incurred attempting to recover the spoliated evidence; or (iii) those incurred in the preparation of this Fee Motion and requisite attendant filings.  For each of these categories, the fees and expenses NuVasive incurred (and is incurring) are reasonable under the circumstances and pursuant to this Court's precedent.  Further, none of the factors set forth in *Hefter Impact* warrant any downward adjustment.  Therefore, the Court should enter an order awarding it all of the requested fees and expenses, consistent with the Report and Recommendation and First Circuit precedent.

1.  **The Time Expended for the Original Motion, the Supplemental Memorandum, and the Renewed Motion was Reasonable.**

The time spent on the Original Motion, the Supplemental Memorandum, and the Renewed Motion was reasonable. Counsel for NuVasive spent 217.7 hours—over an eighteen-month period—preparing and successfully prosecuting the Original Motion, the Supplemental Memorandum, and the Renewed Motion, and then defending that successful result in the face of Defendant's Objection to the Report and Recommendation.  This time includes:

- Researching and drafting the extensive Original Motion and its associated filings;
- Drafting the motion for leave to file the Reply to the Original Motion;
- Researching Defendant's justification for the lack of evidence;
- Drafting the Reply to the Original Motion;
- Preparing for and arguing the Original Motion;
- Researching and drafting the Supplemental Memorandum;
- Analyzing the ability to file a renewed motion in light of further findings;
- Drafting the Renewed Motion and its associated filings;
- Preparing for and arguing the Renewed Motion;
- Drafting the Reply to the Objection;
- Preparing for and arguing the Objection before the Court; and

- Consulting with an expert regarding the substance of the filings and preparing his declaration testimony in support of those filings.

(Decl. C. Cardwell, attached as **Exhibit 1**). Of the 217.7 hours and $58,135.00 fees, GSRM incurred $49,270.00 of these fees.

Additionally, because NuVasive's lead counsel, Gullett, Sanford, Robinson & Martin, PLLC ("GSRM") is located in Nashville, Tennessee, and appeared in this proceeding *pro hac vice*, NuVasive retained Hermes, Netburn, O'Connor, & Spearing, P.C. ("Hermes Netburn") as local counsel as required by Local Rule 83.5.3(e). Hermes Netburn's representation included revising and finalizing all of the court filings to comport with the Local Rules and practices of the United States District Court for the District of Massachusetts; attendance at the hearings; and consulting on strategy. It expended a total of 26.1 hours on these tasks. (Decl. H. Polglase, attached as **Exhibit 2**, ¶ 13). NuVasive paid $8,865.00 in fees related to Hermes Netburn's local representation with regard to successfully prosecuting its request for relief under Federal Rule of Civil Procedure 37(e). (**Id.**)

Throughout this entire process—from the filing of the Original Motion on April 24, 2020, through the Court's entry of its order adopting the Report and Recommendation on October 14, 2021—Defendant vehemently and consistently contested NuVasive's request for relief. (Decl. C. Cardwell, **Exhibit 1**, ¶ 18). Defendant is entitled to object to NuVasive's request for Rule 37(e) relief in the manner he deems appropriate, but he cannot later be heard to complain that the fees incurred as a result of those efforts—which successfully obtained all of the relief NuVasive sought—were unreasonable. Furthermore, none of the factors detailed by the *Hefter Impact* Court warrant any downward adjustment of NuVasive's hours. Indeed, "[a] 'preeminent' factor in this determination is the 'results obtained.'" 2017 U.S. Dist. LEXIS 194706, at *11 (quoting *Coutin v. Young & Rubicam P.R., Inc.*, 124 F.3d 331, 338 (1st Cir. 1997)). Here, NuVasive obtained

every aspect of the relief sought in its sanctions filings, satisfying its heightened burden to impose an adverse inference and award of fees and expenses pursuant to Federal Rule of Civil Procedure 37(e)(2).  No reasonable argument can be made that the results NuVasive obtained warrant any downward adjustment.

## 2.   The Time Expended for NuVasive's Attempts to Recover the Lost Evidence is Reasonable.

Second, this Court awarded NuVasive "the attorneys' fees and expenses it incurred in prosecuting its initial motions for sanctions and its renewed motions, including costs associated with NuVasive's attempts to recover the lost evidence." (D.E. 217, p. 19).  After learning of Defendant's spoliation, NuVasive undertook significant efforts to replace, at least in part, the lost evidence.[2]  These efforts included subpoenaing various non-parties, including, without limitation, Defendant's cell phone provider—Verizon Wireless—and people or entities who could possess the spoliated evidence whom NuVasive was able to identify, such as Defendant's current employer, Alphatec Spine, which was a time-intensive undertaking.  (Decl. C. Cardwell, **Exhibit 1**, ¶ 18).  Additionally, NuVasive undertook other efforts to try and remedy Defendant's intentional spoliation, including taking an additional court-ordered deposition of Defendant regarding certain communications he failed to produce.  NuVasive incurred 258.9 hours and $60,393.50 in fees in this arduous process, consisting of 241.1 GSRM hours ($55,701.00) and 17.8 Hermes Netburn hours ($4,692.50).  (**Id.** at ¶ 14; Decl. H. Polglase, **Exhibit 2**, ¶ 13).

NuVasive anticipates that Defendant will argue that NuVasive's fees and expenses are too high.  However, this position is belied by his argument against NuVasive's request for Rule 37(e) relief—that NuVasive should have deposed additional witnesses and conducted other extensive

---

[2] NuVasive notes that Rule 37(e) requires consideration of and a finding that the spoliated evidence "cannot be restored or replaced through additional discovery[.]"

discovery to support its claim that it was prejudiced by the loss of the evidence.  (Decl. C. Cardwell,

**Exhibit 1**, ¶ 18, n.1).

### 3.   The Rates Requested Are Reasonable.

In making the determination of a reasonable hourly rate, a court "must consider 'the type

of work performed, who performed it, the expertise that it required, and when it was undertaken.'"

*Hefter Impact Techs., LLC v. Sport Maska, Inc.*, Civil Action No. 15-13290-FDS, 2017 U.S. Dist.

LEXIS 194706, at *5 (D. Mass. Nov. 28, 2017) (quoting *Grendel's Den, Inc. v. Larkin,* 749 F.2d

945, 951 (1st Cir. 1984)). The relevant area for determining the reasonable hourly rate "is the

community where the court sits." *Stokes v. Saga Int'l Holidays, Ltd*., 376 F. Supp. 2d 86, 92 (D.

Mass. 2005).

In this matter, NuVasive seeks attorneys' fees at the following rates:

- $350 per hour for Christopher W. Cardwell, who is lead counsel in the matter. He is a member at Gullett, Sanford, Robinson & Martin, PLLC ("GSRM"), with over 24 years of experience litigating complex civil matters in state and federal courts all over the United States, with over 11 years spent as one of NuVasive's primary litigation counsel, and is currently involved in other litigation matters with counsel for Defendant;

- $325 per hour for Mary Taylor Gallagher, a member at GSRM, with almost 20 years of experience litigating complex civil matters in state and federal courts all over the United States, with over 11 years spent as litigation counsel for NuVasive;

- $230 per hour for M. Thomas McFarland, an associate at GSRM, with over 7 years of experience litigating complex civil matters, and 6 years spent working on NuVasive matters;

- $230 per hour for William C. Scales, an associate at GSRM, with over 10 years of experience in complex civil litigation;

- $230 per hour for Hilary C. Dennen, an associate at GSRM, with over 4 years of experience in complex civil litigation;

- $230 per hour for Flynne M. Dowdy, a former associate at GSRM, with over 7 years of experience in complex civil litigation;

9

- $150 per hour for Tillie Noble, a paralegal at GSRM, with over 21 years of experience, and over 11 years of experience working on NuVasive matters;[3]

- $350.00 per hour for Holly M. Polglase, a shareholder at Hermes Netburn, with over 33 years of experience in complex civil litigation;

- $350.00 per hour for Michael S. Batson, a shareholder at Hermes Netburn, with over 21 years of experience in complex civil litigation;

- $275.00 per hour for Michael C. Kinton, a former associate at Hermes Netburn, with over 10 years of experience in complex civil litigation;

- $275.00 per hour for Matthew E. Bown, an associate at Hermes Netburn, with over 8 years of experience; and

- $150.00 per hour for Nicole St. Pierre, a former paralegal at Hermes Netburn, with over 15 years of experience.

These hourly rates are reasonable for attorneys and paralegals in the Boston area.  (Decl. H. Polglase, **Exhibit 2**, ¶¶ 15–16; Decl. C. Cardwell, **Exhibit 1**, ¶ 17).  Indeed, certain of the rates charged by GSRM may be less than the prevailing rates charged in the Boston area by attorneys of similar skill and expertise.  (Decl. H. Polglase, **Exhibit 2**, ¶ 16).

Previously, this Court determined that fees far in excess of the requested hourly rates are customary for complex civil litigation in the Boston area. *Kelly v. Riverside Partners, LLC,* 397 F. Supp. 3d 75, 95 (D. Mass. 2019) (finding that hourly rates of $950 and $1,020 per hour for a partner and $425 and $550 per hour for an associate were reasonable in light of the education, experience and ability of counsel and "the customary market rates for large commercial law firms in the Boston area"); *U.S. v. Coloplast Corp.,* No. 11-CV-12131-RWZ, 2021 U.S. Dist. LEXIS 134411, at *7 (D. Mass. July 19, 2021) (noting that an appropriate hourly rate for an experienced paralegal in Boston is between $125-160); *265 Franklin St. Assocs., LLC v. New*

---

[3] Movants note that GSRM's rates on matters it works for NuVasive are discounted below the firm's standard hourly rates for partners and associates. (Decl. C. Cardwell, **Exhibit 1**, ¶ 12).

10

*Pete's, LLC*, No. 17-cv-12588-LTS, 2020 U.S. Dist. LEXIS 2786, at *5 (D. Mass. Jan. 8, 2020)

(halving the requested paralegal's rate to $165); *Riley v. Mass. Dep't of State Police*, C.A No. 15-

14137-DJC, 2019 U.S. Dist. LEXIS 174182, at *5 (D. Mass. Oct. 8, 2019) (finding sufficient

support in the record for an hourly rate of $350 per hour for associates and $600 per hour and $525

per hour for the two partners on the matter); *de Souza v. Negri*, C.A. No. 14-13788-DJC, 2015

U.S. Dist. LEXIS 19802, at **9-10 (D. Mass. Feb. 19, 2015) (holding rates of $570 per hour for

partners and $345 to $515 per hour for associates who performed "the bulk of the work" reasonable

in awarding fees).  Respectfully, the rates NuVasive requests are more than reasonable considering

the circumstances and First Circuit precedent.  Accordingly, this requirement is satisfied.

### B.  The Court should award NuVasive all of the requested expenses.

NuVasive's expenses relating to the Original Motions, Supplemental Memorandum, and

Renewed Motions are reasonable. NuVasive requests an award of expenses incurred by GSRM

totaling $1,796.85 the following:

- $52.50 for service of a subpoena to Chad Spear;
- $80.00 for service of a subpoena to Lisa Britto;
- $81.00 for service of a subpoena on Verizon Wireless;
- $1,462.50 for the services of Rip Clayton, NuVasive's expert, who provided two declarations regarding Defendant's claims; and
- $120.85 for a copy of the transcript for the June 1, 2020, initial sanctions hearing.

(Decl. C. Cardwell, **Exhibit 1**, ¶¶ 19–20).  NuVasive also incurred expenses in the amount of

$307.00 from Hermes Netburn associated with the issuance and service of certain non-party

subpoenas.  (Decl. H. Polglase, **Exhibit 2**, ¶ 13).  Each of these requested expenses is directly

related to NuVasive's successful prosecution of its sanctions motions or its attempts to remedy

Defendant's spoliation.  They are expressly recoverable per the terms of the adopted Report and

Recommendation (D.E. 217, p. 19).  Accordingly, NuVasive respectfully requests that the Court

award it the $2,103.85 in expenses it incurred as provided by the Report and Recommendation.

C.  **The Court Should Award NuVasive the attorneys' fees for the time spent preparing the fee motion.**

Counsel for NuVasive is still incurring time—and therefore fees—associated with preparing and litigating the present Fee Motion, which total $8,686.00 through the November 30, 2021, billing cycle.[4] Through this time period, NuVasive incurred 27.0 hours totaling $6,446.00 related to the Fee Motion.  (Decl. C. Cardwell, **Exhibit 1**, ¶ 14).  Of course, this work includes the actual researching and drafting of the Fee Motion along with the necessary declarations of counsel. Additionally, it includes the requisite "leg work" consisting of reviewing over 5,000 individual time entries to determine which entries relate to "prosecuting [NuVasive's] initial motions for sanctions and its renewed motions, including costs associated with NuVasive's attempts to recover the lost evidence" as provided for in the Report and Recommendation.  (D.E. 217, p. 19).  This total also includes the time expended by counsel to meet and confer with opposing counsel—on multiple occasions—in good faith as directed by the Court in attempts to reach an agreement on the recoverable fees and expenses.[5]  (Decl. Cardwell, **Exhibit 1**, ¶ 22).  Likewise, Hermes Netburn expended 6.4 hours totaling $2,240.00 performing these analogous tasks.  (Decl. H. Polglase, **Exhibit 2**, ¶ 13).

First Circuit precedent permits the recovery of attorney time and expenses incurred in the preparation and filing of an appropriate motion for award of those fees and expenses that are reimbursable.  *E.g.*, *IMS Health Corp. v. Schneider*, 901 F. Supp. 2d 172, 199 (D. Me. 2012)

---

[4] As is customary, NuVasive's counsel bills monthly. Accordingly, this is the last day of the most-recently completed billing cycle prior to filing the instant Fee Motion. NuVasive can prepare and submit, with relative ease, supplementary counsel declarations as to their December time for consideration by the Court.

[5] To be clear, opposing counsel conferred in good faith with NuVasive, and NuVasive makes no implication or suggestion of anything short of those good faith discussions. The parties, regrettably, were simply not able to reach an agreement on the appropriate amount of fees and expenses to award.

(analyzing this issue in the context of an award of fees pursuant to 42 U.S.C. § 1988).[6]  "At the same time, the First Circuit has cautioned that the work involved 'often amounts to little more than documenting what a lawyer did and why he or she did it.'"  *Id.* (quoting *Brewster v. Dukakis*, 3 F.3d 488, 494 (1st Cir. 1993)).   Accordingly, while NuVasive recognizes that it is likely appropriate to reduce the fees requested for this category of work, it notes that GSRM already discounts its standard hourly rates for its representation of NuVasive.  (Decl. C. Cardwell, **Exhibit 1**, ¶ 12).  NuVasive respectfully requests an award of the fees incurred preparing and bringing the instant Fee Motion—currently totaling $8,686.00—along with its December 2021 fees, subject to any downward adjustment the Court deem appropriate.[7]

## IV.   CONCLUSION

In her August 23, 2021, Report and Recommendation, Magistrate Judge M. Page Kelley found that Defendant intentionally spoliated relevant evidence in this litigation, and recommended that NuVasive be granted all of the relief it requested including an adverse inference when ruling on NuVasive's claim for damages and that, "NuVasive be awarded the attorneys' fees and expenses it incurred in prosecuting its initial motions for sanctions and its renewed motions, including costs associated with NuVasive's attempts to recover the lost evidence." (D.E. 217, p. 19).   After additional briefing and oral argument, this Court adopted the Report and Recommendation in full on October 14, 2021.  (D.E.  226).  While the process to secure relief pursuant to Rule 37(e) was long, NuVasive succeeded in doing so.  Consistent with the Report and

---

[6] First Circuit courts apply the same lodestar method before the Court in this Fee Motion when evaluating a request for fees pursuant to 42 U.S.C. § 1988. *See Wilson v. McClure*, 135 F. Supp. 2d 66, 70 (D. Mass. 2001).

[7] NuVasive also notes that the movant in *IMS Health*, sought fees for 203.3 total hours *with regard to the fee application alone* out of a total of 2,740.35 hours expended in that litigation. 901 F. Supp. 2d at 188, 199. Here, NuVasive has expended a similar amount of hours in this litigation and is requesting a fraction of the hours incurred preparing the instant Fee Motion, despite it requiring more effort to parse out which fees and expenses are recoverable as opposed to simply submitting all time entries and expenses as in *IMS Health*.

Recommendation, and for all the reasons set forth in this Fee Motion, NuVasive respectfully requests that this Court award it $127,214.50 in reasonable attorneys' fees and $2,103.85 in expenses incurred in prosecuting its Original Motion and Renewed Motion and attempting to remediate Defendant's intentional spoliation, along with any fees and expenses set forth in any supplemental declarations regarding time expended in the month of December 2021 as the Court deem appropriate.

Respectfully submitted,

**NUVASIVE, INC.**

By its attorneys,

/s/ *M. Thomas McFarland*

Holly M. Polglase (BBO #553271)
hpolglase@hermesnetburn.com
Michael S. Batson (BBO #648151)
mbatson@hermesnetburn.com
Michael C. Kinton (BBO #683875)
mkinton@hermesnetburn.com
HERMES, NETBURN, O'CONNOR & SPEARING, P.C.
265 Franklin Street, Seventh Floor
Boston, MA 02110-3113
Tel: (617) 728-0050
Fax: (617) 728-0052

Christopher W. Cardwell, Esq. (*pro hac vice*)
Mary Taylor Gallagher, Esq. (*pro hac vice*)
M. Thomas McFarland, Esq. (*pro hac vice*)
GULLETT, SANFORD, ROBINSON & MARTIN, PLLC
150 Third Avenue South, Suite 1700
Nashville, TN 37201
(615) 244-4994 (Telephone)
(615) 256-6339 (Facsimile)
ccardwell@gsrm.com
mtgallagher@gsrm.com
tmcfarland@gsrm.com

*Attorneys for Plaintiff, NuVasive, Inc.*

15

## **CERTIFICATE OF SERVICE**

Pursuant to Local Rules 5.2(b)(2) and 5.4 of the Local Rules of the United States District Court for the District of Massachusetts, I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that paper copies will be sent by first-class mail to those indicated as non-registered participants, if any, on December 21, 2021.

/s/ *M. Thomas McFarland*